MAYOR, ETC., OF CITY OF NEW ORLEANS *v.* UNITED STATES *ex rel.* STEWART.

*(Circuit Court of Appeals, Fifth Circuit. December 7, 1891.)*

**1. MANDAMUS TO MUNICIPAL BOARD—RES ADJUDICATA.**
On an application for a writ of *mandamus* to compel the city of New Orleans to pay a judgment regularly obtained against it, such judgment is conclusive as to the city's liability, and no defense can be made on the ground that the debt was not paid out of the revenues of the year for which it was contracted, in accordance with Acts La. 1877, (Ex. Sess.) No. 30, p. 47, providing that no municipal corporation shall expend any money in any year in excess of the actual revenue for that year, and that the revenue for each year shall be devoted to the expenditures thereof. *U. S.* v. *New Orleans*, 98 U. S. 395, followed.

**2. SAME—POWERS OF COUNCIL—TAXATION.**
The legislature having declared that a 10-mill tax is sufficient to provide for the city's unbonded expenditures, it is not within the discretion of the council to exhaust the entire revenue with one class of disbursements, and leave others to accumulate; and a writ of *mandamus* will issue to compel it to pay a valid judgment against the city, either out of surplus revenues for the current year, or, if there is no available surplus, to include it in the budget for the ensuing year.

**3. SAME.**
A claim that the city is not bound to pay the judgment out of the revenues for the current year, because the whole thereof was necessary for ordinary expenses, is without merit when it appears that $20,000 of such revenues was expended for a drainage machine, which is a permanent improvement, and that the surplus was over $350,000, a large portion of which remained unexpended.

**4. SAME—EXTENT OF REMEDY.**
The fact that other judgments besides the relator's have been recorded under the act of 1877 does not require that the writ of *mandamus* applied for by him shall direct all the judgments to be paid in their proper order, since the court will not undertake to enforce the rights of persons who do not invoke its aid.

Error to the Circuit Court for the Eastern District of Louisiana. Affirmed.

STATEMENT BY LOCKE, DISTRICT JUDGE.

This was a petition by C. H. Stewart, the relator, filed December 31, 1890, in the circuit court of the United States for the district of Louisiana, for a writ of *mandamus* to compel the mayor and council of the city of New Orleans to put upon the budget and appropriate money for the payment of a judgment for $2,484.92, which had been recovered

against the city of New Orleans in said circuit court in June, 1888, and filed and registered in the office of the comptroller of the city of New Orleans, for payment, according to the provisions of the act of March 17, 1870, being Act No. 5, session of 1870. The writ was granted, and from this judgment the case is brought to this court.

The original petition in the suit in which the judgment was obtained shows that the suit was founded upon certificates issued by the city of New Orleans for services rendered that city, namely, street wages, during the year 1882, and alleges that they were made payable out of the revenues of said year, but that the city of New Orleans misappropriated the funds which were so set apart, and destroyed the restriction hitherto existing. The record does not show any traverse or plea to said original petition, but the case went to trial by the court, the parties in the cause having waived a jury trial, and, the cause having been submitted upon the issues of fact as well as law, a final judgment was rendered thereon, which was made general and unrestricted. In the return to the alternative writ of *mandamus,* the judgment was admitted, but it was urged in defense that it was not a liability of the kind contemplated by the act of 1870;[1] that by Act No. 30 of 1877 the obligations contracted during any particular year are confined to the revenues of that year; that unless such revenues pay the claims, it is not an indebtedness of the corporation, and consequently not a liability of the city; and that no liability can be budgeted for out of the regular revenue constituting the alimony of the city, unless there is more thereof than is necessary to carry on the government satisfactorily, and provide for the peace, happiness, health, and comfort of its inhabitants.

*Francis B. Lee,* for plaintiffs in error.

*Chas. Louque,* for the relator.

Before LOCKE and BRUCE, District Judges.

LOCKE, District Judge, (*after stating the facts as above.*) The question as to whether the debt for the collection of which a *mandamus* was prayed was a liability of the city of New Orleans or not has been determined by the judgment. If there could have been any defense made to the action on account of the debt having been contracted for the purposes of the year 1882, and not paid from the revenues of that year, and therefore involving the accumulation of an indebtedness such as was prohibited by the act of 1877, it should have been made at the trial of the cause in the court below. In *U. S.* v. *New Orleans,* 98 U. S. 395, the court says:

"In the present case the indebtedness of the city of New Orleans is conclusively established by the judgments recovered. The validity of the bonds

---

[1] Acts La. 1870, No. 5, abolished the writ of *fieri facias,* as against the city of New Orleans, and substituted therefor the registration of the judgment with the comptroller of the city, and payment by appropriation by the common council in the order of registration. Section 1 takes from the creditors the right to resort to *mandamus* upon the fiscal officers of the city before judgment. Section 2 prohibits the issuance of executions (writs of *fieri facias*) to enforce the payment of any final judgment against the city, "condemning said corporation to pay any sum of money," and provides for their registration. Section 3 provides for the payment of judgments against the city which are "final and executory."

upon which they were rendered is not now open to question.   Nor is the payment of the judgments restricted to any species of property or revenues, or
subject to any conditions.   The indebtedness is absolute.   If there were any
question originally as to a limitation of the means by which the bonds were
to be paid, it is cut off from consideration now by the judgments.   If a limitation existed, it should have been insisted upon when the suits on the bonds
were pending, and continued in the judgments.   The fact that none is thus
continued is conclusive on this application that none existed."

Also, *Nelson* v. *Police Jury St. Martin's Parish*, 111 U. S. 716, 4 Sup.
Ct. Rep. 648.

But it is urged that, although this may be a judgment absolute, yet
it may be sufficiently examined, for the purpose of ascertaining if it is
such a liability as was entitled to registration under the act of 1870.   If
we yield to the arguments of counsel so urgently made, and go back of
the judgment for that purpose only, we find that the cause of action was
on contract for services and supplies for the year 1882; and that the original petition alleges that the funds of that year were misappropriated by
the city of New Orleans.   Upon these allegations the case was tried, and
an absolute judgment given.

The allegations of the petition upon which the judgment was based, in
the absence of any further record, are sufficient to show the nature and
character of the debt, and the reason why it was not paid from the revenues of that year.   There is nothing to show that any provision of the act
of 1877 was violated, that any money was appropriated for the year 1882
in excess of its revenues, nor that any warrant or evidence of indebtedness was issued, except against money actually in the treasury.   It certainly cannot be contended that the act of 1877 was intended to invalidate a debt which was just and legal when incurred, on account of a
misappropriation of funds from which it should have been paid.   The
reason why the judgment was not made payable from the revenues of
the year 1882 is plainly apparent from the allegations of the record that
those funds had already been misappropriated.   But we consider that
the judgment has determined all those questions, and must be accepted
as final and conclusive.

In every act in which the budgeting or estimating for the amount of
revenue required for the ensuing year has been considered, it has been
expressly stated, in terms, that the liabilities should be included in the
estimates.   That the policy of legislation and will of the legislators is
against permitting an increase of indebtedness, from which so much financial trouble has come in the past, is distinctly shown.   If the liabilities
of one year's unpaid bills can be ignored, so can those of another, until
the accumulation of a floating indebtedness comes to be regarded as a
matter of no importance.   In order to prevent this, it appears that the
duty of municipal officers has been made plain and distinct in this respect.   It has been repeatedly established, by a line of decisions, both in
the supreme court of the United States and of this state, that it is the
duty of the common council of the city to budget, provide for, and pay
its liabilities.   Where it has been found that there had been a more extended power of taxation at the time of the contract upon which the in-

debtedness was founded, it has been ordered that that be resorted to; and, where it has been considered that the revenues of the city were only sufficient for the alimony, or, in other words, the running expenses, of the city for the then present year, resort has been had to future budgets, and the writ issued accordingly. But in no case has it been declared that it is within the discretion of the city government to pay or to refuse to pay its liabilities, and permit the accumulation of the same.

We most cheerfully accept the principle that in all matters of state and municipal law, the construction of the supreme court of the state must control, but we fail to find therein such construction or principle established. In *State* v. *Mayor*, 30 La. Ann. 129, a case in which the question was fairly presented, demanding a positive answer, whether or not it was the duty of the city government to provide in the yearly budget out of the funds to arise from the general tax means for paying judgments against the city, and whether a writ of *mandamus* would issue for the purpose of compelling a performance of this duty, the question was answered in the affirmative. In the case of *Moore* v. *City of New Orleans*, 32 La. Ann. 726, it does not appear by the statement of the case and questions under consideration, as found in the opinion of the court, that such question was involved in the determination of the case; nevertheless, the writ was issued to compel the performance of what the court termed a ministerial duty in levying and applying the tax. The same may be said in the case of *Saloy* v. *City of New Orleans*, 33 La. Ann. 79. This question does not appear to have been involved in the determination of the case at issue. In no case has an applicant for a writ of *mandamus* to compel a performance of the duty of providing for the liabilities of the city been refused, but in numerous cases has it been granted. The legislature has declared a 10-mill tax to be sufficient to provide for the city's unbonded expenditures and liabilities, and it is not within the discretion of the council to exhaust the entire revenue with one class of disbursements, and leave the other to accumulate. In truth, it seems to be the plainly expressed intention of both legislative and judicial branches of the government to protect the city of New Orleans from the shoals and quicksands of financial embarrassment on account of any further accumulation of unfunded indebtedness.

In this case it is claimed that the entire revenues of the city have been appropriated and are necessary for alimony,—the running expenses,— necessary for nourishing, protecting, and preserving the peace and welfare of the city. This is not conceded by relator, but it is contended that several items of appropriations are for permanent improvements, which should not be paid from the four-fifths of the revenues which are set apart for the purposes of providing for the liabilities and ordinary expenses. It is not within the province of a court to interfere with the distribution of the revenues of a city when the plain duties of its officers are performed. Nor do we assume to be vested with the power to frame a budget for the city of New Orleans, but we do consider that we are vested with the power to examine such budget, when made, and to determine therefrom the compliance or non-compliance with a plain

and positive duty, when it is based upon an allegation of insufficient revenues, and an exhibit presented to substantiate such allegation.

By an act of the legislature, No. 109 of 1886, it is provided that 20 per cent. of the revenues shall be reserved for the purposes of permanent public improvements. This would necessarily imply that the other four-fifths were to be devoted entirely to the budget of liabilities and expenditures. Permanent public improvements could not, even in the absence of such legislation, be considered and deemed the necessary alimony of the city under any proper construction of that word, and this conclusion simply declares this well-established principle. Upon an examination of a copy of the budget of 1891, an exhibit filed with respondent's answer, to justify the allegation that the entire revenues are necessary for the alimony of the city, we find in item 41 an appropriation of the amount of $20,-000 for a purpose, of which the respondents in their answer say: "It is equally clear that a drainage machine is a permanent public improvement." Accepting respondent's own representation of the character of this appropriation, it would certainly appear to be improperly taken from the amount claimed to be so necessary for the alimony of the city. We say nothing of several other items of appropriations which have been objected to by relator, and only accept respondent's declaration of the character of the item mentioned. All of these are doubtless proper and just, but, when they are offered as an excuse for the non-payment of an amount incurred for the necessary alimony of the city in a past year, it seems that they should be paid from the reserve set apart for that purpose. To show that such appropriation from such portion of the revenue was not absolutely necessary, we can but refer to the exhibit of the reserve fund. This fund amounted, it appears by ordinance 4987, to $362,060.24. Of this amount but $165,000 was appropriated, leaving a large proportion of the reserve revenues undisposed of. We make no comment upon this further than to mention it in answer to the plea of insufficient revenues and inability to pay declared liabilities.

We fail to find in the answer of respondents and the exhibit of the budget of 1891 such evidence of the necessity for the entire revenue of the city for the purpose of its alimony as would justify the neglect of a performance of a plain and declared duty.

But one point remains, and that is that relator, if entitled to the writ, is only entitled to it to pay the entire list of judgments recorded under the act of 1877, and that his judgment be paid only in order of recordation. To this it is only necessary to say, as the supreme court of the state have said in *State* v. *City of New Orleans*, 37 La. Ann. 18:

"We are not called upon to consider the rights of other judgment creditors whose judgments rank that of relators in order of registry. The record does not advise us whether their judgments are based on contracts, or whether they rest upon causes of action arising prior to the constitutional amendment of 1874. It may be that none of them can compete with relators in the relief sought; but at all events, the unexhausted powers of taxation are ample to satisfy all; and if they are entitled to like rights with relators, and have neglected to exercise them, there is no reason why relators should suffer."

We find, therefore, no error in the action of the court below, and the judgment for a peremptory writ of *mandamus* must be affirmed, with costs; but so much time has been occupied by the delays of this case that the budget of 1891 may no longer be available, and it is ordered that this case be remanded to the court below, with instructions that a peremptory writ of *mandamus* issue, commanding the respondents herein to appropriate and pay from any appropriation of 1891, of which there is any surplus remaining in the treasury after all liabilities and expenditures have been paid, as contemplated in section 5 of Act No. 38 of 1879, a sum sufficient to pay said judgment and interest and costs in the court below and herein; and, if no such sum remains of any appropriation of the said budget of 1891, after all such liabilities and expenses have been paid, to proceed at their first regular meeting after service of said writ to budget and appropriate in the estimate and appropriations for the year 1892 such sum, as aforesaid; and it is so ordered.

PARDEE, Circuit Judge, did not participate in the hearing or determination of this case.

BRUCE, District Judge. I concur in the conclusion and judgment of my Brother LOCKE in this case. It is my opinion that it was the duty of the common council of the city to put the relator's judgment upon the budget for the year 1891; that it was an act ministerial in its character, and mandatory, under the provisions of the act of Ex. Sess. 1870; that it was not within the discretion of the common council to postpone the relator's judgment upon the ground that all the revenues of the city for the year 1891 are required to provide for what is called the alimony of the city, or on any other ground, and that the decisions of the supreme court of the state cannot be held, upon a fair consideration, to have settled the law in Louisiana otherwise.