THE PEOPLE OF THE STATE OF NEW YORK ex rel. SECURITY TRUST COMPANY OF ROCHESTER, Appellant, *v.* THE TREASURER OF THE COUNTY OF MONROE, Respondent.

1. MANDAMUS — CERTIFICATES OF INDEBTEDNESS FOR CONSTRUCTION OF SEWER — WHEN MANDAMUS WILL BE GRANTED TO COMPEL PRO RATA PAYMENT OF CERTIFICATES FROM ASSESSMENT FUND LEVIED FOR CONSTRUCTION OF SEWER — ROCHESTER (CITY OF). Where a statute (L. 1892, ch. 603) authorizing the construction of a sewer in the city of Rochester and an adjacent township by commissioners appointed by the Monroe County Court provided that the necessary funds for the construction of the sewer should be obtained, in the first instance, by the issue of certificates of indebtedness, and directed that an assessment for the cost of the sewer be levied upon the property to be benefited thereby, such assessment, when collected, to be paid to the treasurer of the commission, and by a subsequent statute (L. 1904, ch. 620) it was provided that such assessments should be collected by collectors to be appointed by the Monroe County Court, and, when collected, should be paid to the treasurer of Monroe county, who should be the custodian thereof, and render accounts thereof at least once in six months, an owner of certificates of indebtedness more than three years overdue — the sewer having been completed and a substantial portion of the assessment having been collected and being in the hands of said county treasurer — is entitled to a writ of mandamus directing the county treasurer to pay upon such certificates a *pro rata* share of the moneys in his possession.

16 People ex rel. Security T. Co. *v.* Treasurer, etc. [Jan.,

Statement of case. [Vol. 191.

2. Same — When Direction to Pay Certificates of Indebtedness Implied by Statute (L. 1904, Ch. 620) Directing Mode of Collecting Assessment — When Mandamus Sole Remedy of Certificate Holder. Although the statute (L. 1904, ch. 620) does not in terms direct that the county treasurer shall apply the fund, when collected, to the payment of the outstanding certificates of indebtedness, such direction is necessarily implied, since the sole security for the payment of the certificates is the proceeds of the assessment levied for the sewer, and to such proceeds the certificate holders have an absolute contract right of which they cannot be deprived either by legislation enacted after the issue of the certificates or by any failure to enact appropriate legislation. A certificate holder having, thus, the right to compel the application of the funds held by the county treasurer towards the satisfaction of his claim, there is no remedy to enforce that right other than by mandamus.

3. Same — When Certificate Holder Not Required to Apply to County Court for Relief or Wait Until Fund Is Completely Collected. A contention that the relator's application for relief should have been made to the County Court of Monroe county is untenable where, in the statute (L. 1904, ch. 620), no authority is granted to that court to direct any distribution of the sewer fund among the certificate holders, and the relator is, therefore, confined to common-law remedies; nor can the relator be compelled to wait indefinitely the determination of all proceedings by the collectors to enforce the assessment before obtaining any part of the fund on hand.

4. Discretion of Supreme Court — When Not Reversed by Order of Appellate Division Reversing Order Made at Special Term. Where the discretion vested in the Supreme Court to grant or refuse a partial distribution while the fund was in course of collection was exercised by the Special Term when it granted relator's application for the writ of mandamus, that discretion has not been disturbed by the Appellate Division where the order made by that court reversing the order of the Special Term states that it was not made in the exercise of its discretion.

*People ex rel. Security Trust Co.* v. *Treasurer, etc.*, 121 App. Div. 84, reversed.

(Argued January 6, 1908; decided January 21, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered August 7, 1907, which reversed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant to apply certain funds to the payment of assessment bonds or certificates of indebtedness of the West Side sewerage commission and denied said motion.

The facts, so far as material, are stated in the opinion.

1908.] People ex rel. Security T. Co. *v.* Treasurer, etc. **17**

N. Y. Rep.] Opinion of the Court, per Cullen, Ch. J.

*Edwin A. Nash* for appellant. The duty of paying the assessment bonds or certificates of indebtedness issued by the commissioners of sewerage now remaining outstanding and unpaid devolves upon the treasurer of Monroe county as custodian of the west side sewer fund. (L. 1898, ch. 315; L. 1904, ch. 620.) The amount of the west side sewer fund, $89,271.19, should be applied to the payment of the assessment bonds of the sewerage commissioners, outstanding and unpaid, and the ratable proportion upon $38,000 of such outstanding bonds paid to the Security Trust Company, as directed by the order of the Special Term. (L. 1904, ch. 620.) Mandamus is the proper remedy. (*People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26.)

*John A. Barhite* for respondent. It is the office of the writ of mandamus to compel the exercise of authority already existing and not to establish rights or to determine controversies. (*People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26; *People ex rel. Hoffman* v. *Rupp*, 90 Hun, 145; *Brownsville* v. *Loague*, 129 U. S. 443; *Matter of McLarney*, 90 Hun, 361; *Matter of Nichols*, 91 Hun, 134; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425.) A person entitled to a writ of mandamus must establish a clear legal right thereto, and that there is no other adequate and legal means to obtain relief. (*Matter of Curran*, 38 App. Div. 82; *Matter of Finnigan*, 91 Hun, 176; *People ex rel. P. Co.* v. *Mooney*, 4 App. Div. 557; *People ex rel. McMackin* v. *Bd. of Police*, 107 N. Y. 235.) The issuance or refusal of a writ of mandamus is discretionary and the writ should only be issued in the exercise of a sound discretion. (*People ex rel. McMackin* v. *Bd. of Police*, 107 N. Y. 235; *People ex rel. N. Y. U. Ry. Co.* v. *Newton*, 126 N. Y. 656; *People ex rel. P. C. S. Bank* v. *Cromwell*, 102 N. Y. 477; *People ex rel. Bennett* v. *Miller*, 43 Hun, 463.)

Cullen, Ch. J. By chapter 603 of the Laws of 1892 the legislature directed the construction of a sewer in a portion

2

of the city of Rochester and in the adjoining town of Gates,
county of Monroe.   By the statute commissioners to prose-
cute and conduct the improvement were to be appointed by
the County Court of Monroe county on the application of five
or more interested freeholders.   The necessary funds were
to be obtained in the first instance by the issue of certificates
of indebtedness bearing interest at the rate of six per cent,
and an assessment for the cost of the improvement was
directed to be levied upon the property benefited thereby,
and in case the first assessment was insufficient to meet such
cost a further assessment was to be imposed.   The assess-
ments when collected were to be paid to the treasurer of the
commission.   There is no express direction in the statute for the
payment of the certificates of indebtedness out of the moneys
collected on the assessments, but this is the plain scheme and
intent of the act.   The credit of no municipality was pledged
for the payment of the bonds and the sole reliance of the cred-.
itor was necessarily limited to the assessment fund.   The work
was done under this statute.   The cost was paid by the issue of
certificates of indebtedness, of which the relator holds $38,000
in amount, which certificates, by their terms, matured on Feb-
ruary 1st, 1904.   By an amendatory act (Laws 1895, ch. 438)
the details of the scheme for prosecuting the improvement were
modified in many respects, but one of which is material here.
By section 20 it was provided that on the completion of the
sewer the commission should turn over to the treasurer of the
city of Rochester all their books of accounts, records of pro-
ceedings and contracts, all moneys on hand, the assessment
roll and all uncollected assessments and papers connected
therewith, which city treasurer was thereafter to have
all the powers vested by the original act in the treas-
urer of the ·commission.   By chapter 315 of the Laws of
1898, the statute was further amended and the treasurer of
the city of Rochester was empowered to issue assessment
bonds of an amount not exceeding $400,000, and out of
the proceeds thereof redeem and cancel the certificates
of indebtedness issued by the commissioners.   Nothing

1908.] People ex rel. Security T. Co. *v.* Treasurer, etc. **19**

N. Y. Rep.]     Opinion of the Court, per Cullen, Ch. J.

seems to have been done under this last statute, and in 1904, by another act of the legislature (Ch. 620) provision was made for the appointment of special collectors to be appointed by the County Court for the purpose of collecting the assessment for said sewer. The moneys so collected were to be paid over to the county treasurer of Monroe county and were to be " deemed as to the custody of the same, as funds of the county of Monroe," and to " be known as the west side sewer fund." The statute further provided that the treasurer should, at least once in six months, file a statement of said funds with the Monroe County Court, which accounts should be audited, and any person interested in the funds should have a right to appear in reference thereto. The relator on affidavits reciting the general history of the legislation as heretofore set forth, its ownership of $38,000 in amount of the bonds, the fact that the county treasurer had in his possession as the proceeds of said sewer assessments the sum of $89,271.19 and that the total amount of the outstanding certificates was the sum of $281,000, applied for a mandamus directed to the county treasurer to pay to it a *pro rata* share of the moneys in his possession. The affidavits in opposition to the application do not put in issue any of the allegations of the relator except that the outstanding certificates are stated to be somewhat less in amount than that charged in the relator's papers. The treasurer, in justification of his refusal to pay the relator, states that the collectors are still engaged in the enforcement of the assessment and that it would be unwise to enforce any payment on the certificates until the labors of the collectors are concluded. He also pleads the lack of statutory authority to make payments out of the fund in hand. The Special Term granted the writ; that action has been reversed by the Appellate Division.

We are of opinion that the relator was entitled to the relief sought. It had the corporate or personal obligation of no municipality, and, therefore, could maintain no action at law on their certificates of indebtedness. The sole security for the payment of the certificates held by it was the proceeds of

the assessment levied for the improvement. But to such proceeds it, with the other certificate holders, had an absolute contract right of which it could not be deprived either by subsequent legislation or any failure to enact appropriate legislation. Though the statute of 1905 does not in terms direct that the county treasurer shall apply the fund when collected to the payment of the outstanding certificates of indebtedness, we think that such direction is necessarily implied, for, as already said, the legislature could not divert those funds to any other purpose. Having thus the right to compel the application of the funds in hand towards the satisfaction of the claim held by it, we do not see that it has any other remedy to enforce that right than by mandamus. The decision of the learned Appellate Division apparently proceeds on the ground that the relator's application for relief should be made to the County Court. We find, however, in the statute no authority granted to that court to direct any distribution of the fund among the certificate holders, and the relator is, therefore, confined to common-law remedies. Nor can the relator be compelled to wait indefinitely the termination of all proceedings by the collectors to enforce the assessment before obtaining any part of the fund on hand. The certificates of indebtedness held by it matured February 1st, 1904. This application was made in March, 1907, more than three years after that time. It may be years before the matter of the collection of the assessments is finally terminated by the collection of all those which are collectible and the abandonment of those which cannot practically be enforced. Meanwhile the relator is deprived of the possession of money that justly belongs to it. We do not mean to assert that every time a small sum is collected the county treasurer should be compelled to distribute it. The sum collected is not insignificant, but substantial, approximating thirty per cent of the outstanding indebtedness, and the relator has waited for three years before seeking to enforce its claim. Whatever discretion there might be vested in the Supreme Court to grant or refuse a partial distribution while the fund

was in course of collection was exercised by the Special Term when it granted the application and that discretion has not been disturbed by the decision of the Appellate Division, for the order of reversal by that court states that it was not made in the exercise of its discretion.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs and ten dollars costs of motion.

GRAY, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; WERNER, J., not sitting.

Ordered accordingly.