HOOK v. GERMAN AMERICAN BANK et al.

(Supreme Court, Appellate Division, Fourth Department.  July 9, 1912.)

1. MUNICIPAL CORPORATIONS (§ 953*)—BONDS—PAYMENT.

Laws 1892, c. 603, as amended by Laws 1895, cc. 438, 744, and Laws 1896, c. 650, provided for the construction of a sewer in a city and an adjoining town by sewerage commissioners having power to make the usual assessment of benefits, and to make further assessments if the first was found insufficient, to borrow money for the construction of the sewer, and issue bonds therefor.  The commissioners issued bonds in which as commissioners they promised to pay the amount thereof, which bonds reserved the right to pay the principal at any time interest was payable.  Laws 1898, c. 315, transferred the powers of the sewerage commissioners to the city treasurer, and also provided for a reassessment, if necessary.  Section 2 authorized the treasurer to issue bonds, and from the proceeds thereof, and from available money in his hands as successor of the commissioners, to redeem the bonds theretofore issued by the commissioners.  The treasurer issued no new bonds, and took no proceedings for a reassessment, but did pay a considerable amount of the old bonds from the proceeds of the assessment made by the commissioners.  Laws 1904, c. 620, provided for the transfer of the duties of the city treasurer in this respect to the county treasurer, and made no provision for a reassessment to meet the deficiency in the first assessment.  Held, that the payment of some of the bonds by the city treasurer in full without paying other outstanding bonds was proper, since at that time the rights of the holders of the outstanding bonds were amply protected by the provisions for reassessment and issuance of new bonds, and the holders of such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bonds could not require the repayment of the bonds paid, and the apportionment of the amount pro rata among all the bondholders.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1999–2001; Dec. Dig. § 953.*]

2. Costs (§ 91*)—Joint Defendants—Separate Costs.

Where plaintiff in his complaint asked for costs against each defendant separately, the interests of the defendants were several, and they appeared by separate attorneys, the allowance to them of separate bills of costs was proper.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 356–368; Dec. Dig. § 91.*]

Appeal from Special Term, Monroe County.

Action by Carroll L. Hook on behalf of himself and others, owners of West Side sewer bonds, against the German American Bank and others. From a judgment (71 Misc. Rep. 552, 129 N. Y. Supp. 491) dismissing the complaint on the merits as to certain defendants, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, and ROBSON, JJ.

George A. Carnahan (Carnahan, Adams, Jameson & Pierce, on the brief), for appellant.

Clarence P. Moser (Satterlee, Bissell, Taylor & French, on the brief), for respondents, German American Bank and others.

Henry G. Danforth, for respondent Rochester City Hospital.

Plumb & Plumb, for respondent Alvin E. Plumb.

Sardius D. Bentley, for respondent Potter.

Benjamin B. Cunningham, for respondent Samuel B. Williams.

Wile & Oviatt, for respondent Helen M. Reed.

McGuire & Wood, for respondent Horace E. McGuire.

ROBSON, J. [1] The main purpose of this action is to require an accounting of the entire fund produced by assessment on property benefited by the West Side sewer, and to require those defendants whose certificates have been paid in full to restore to the fund an equitable proportion of such payment for the benefit of the plaintiff and others in like case, whose certificates have not been paid in full, to the end that a ratable adjustment of payments of said fund upon such certificates may be decreed. Plaintiff is the owner of 13 certificates of indebtedness, which I will hereafter refer to as bonds, issued by commissioners of sewerage, pursuant to the statutory authority conferred upon them for the purpose of raising funds to construct a sewer in certain wards of the city of Rochester and the town of Gates, known as the West Side sewer. Each bond was of the denomination of $500, bearing interest at the rate of 6 per cent. per annum payable semiannually and serially numbered. The total issue of bonds was $453,500.

The construction of the sewer was authorized in the first instance by chapter 603 of the Laws of 1892. Amendments or supplementary legislation to this statute were successively made by chapter 438, Laws

of 1895, chapter 744, Laws of 1895, chapter 650, Laws of 1896, chapter 315, Laws of 1898, and chapter 620, Laws of 1904. Broadly speaking, the general scheme of the statute was similar in general purport to that usually found in statutes authorizing local improvements benefiting limited areas, or districts, in a municipality, the expense of which is to be met by local assessment upon property benefited within the assessment district. So far as material for our present purpose, the statute provided for the appointment of commissioners of sewerage having power, among other things, to construct the sewer, and pay the expense thereof from assessments by them levied, which were to be made by them from their determination of the value of benefits and of the probable cost and expense of the work before they entered upon the construction of the sewer, and which were to be a lien upon the lands assessed and a personal liability of the individual owners. They were also empowered to make further assessments from time to time in case the first assessment was found to be insufficient to defray the cost of the work. They were also authorized, in case they should deem it necessary to procure funds for the sewer construction before the assessments could be made and collected, to borrow from time to time moneys in their opinion necessary therefor, and to issue evidences of indebtedness in such sums and form as they might deem proper bearing 6 per cent. interest payable semiannually, the principal thereof payable in not more than 10 years. These certificates were to be "negotiable by delivery," and receivable in payment of assessments levied, and the interest accruing thereon was to be assessed as an expense of sewer construction. The commissioners made the required assessment, and prior to August, 1896, had issued about $200,000 of bonds or certificates. Beginning in August, 1896, the commissioners issued bonds of the series now in question to the amount of $453,-500, as I have already stated, from the proceeds of which they retired the earlier issue.

By the terms of the bond the commissioners, as commissioners, acknowledge an indebtedness in the amount of the bond, and as such commissioners promise to pay the same and the interest coupons as they should become due; but there is no corporate or personal obligation to pay the same. The owner of such a certificate had as his sole ultimate recourse for its payment the proceeds of assessments levied for the improvement, to which he with the owners of other certificates had an absolute contract right. People ex rel. Security Trust Co. v. Hamilton as Treas., etc., 191 N. Y. 15, 19, 83 N. E. 661. The bonds matured in 10 years, and contained a further provision that "the right of paying this bond at any time when interest is payable, after the expiration of two years from the date hereof, was reserved." The date of the bonds was August 1, 1906.

The sewer was completed; and in 1898 an act which I have referred to above was passed providing, as stated in its title, for the transfer to the treasurer of the city of Rochester of certain powers of the commissioners of sewerage. By this legislation the commissioners were required within 20 days to transfer all records, etc., the assessment roll, all moneys collected thereon, and all other funds as well as

liens, or titles, to lands acquired by them on any sale for unpaid assessments, whereupon their duties were to cease, except as thereinafter provided. The reserved power of the commissioners seems to have been simply the right and duty to make a reassessment, provided they were required to do so in the manner provided by the statute, in the event the treasurer should at any time determine that the amount of assessment theretofore levied was insufficient to pay off the new bonds to be issued by the treasurer as provided in that act, if such deficiency should exceed the sum of thirty thousand dollars. The act also provided for a reassessment by other means, if the deficiency did not exceed that sum. By section 2 of the act, the treasurer, in addition to the powers already conferred upon him by the prior legislation referred to in the act, was "empowered to issue and offer for sale and sell at not less than par value thereof assessment bonds to the amount of four hundred thousand dollars, or so much thereof as may be required for the purposes hereinafter specified." The rate of interest on such bonds is fixed at 4½ per cent. payable semiannually, and to mature in from one to six years from August 1, 1898, in amounts to be determined by the treasurer. The section then continues:

"With the proceeds of the sale of said bonds together with the available money in his hands as the successor in office of the said commissioners the said treasurer of the city of Rochester shall redeem and cancel the certificates of indebtedness or assessment bonds heretofore issued by the said commissioners of sewerage under the provisions of [the former laws in that regard]. Such redemption shall be made Aug. 1st, 1898, or at the earliest practicable date thereafter."

It was further provided that these bonds to be issued by the treasurer were to have the same force and effect as those theretofore issued by the commissioners of sewerage. Defendant Williams was then the city treasurer, and the commissioners duly complied with the statute by turning over to him the funds, records, etc., as required by its terms.

It will be recalled that the right to pay the bonds issued by the commissioners at their option would mature at the date last above referred to. The treasurer received from the commissioners a considerable sum which had been collected by them on the assessments. On or about August 1, 1898, the treasurer paid from the fund in his hands certain certificates, some of which were held by two of the parties defendant. As other funds became available from assessment collections other certificates were paid and retired. Up to January 1, 1905, when Williams was succeeded as treasurer by Otis, he had thus paid and retired bonds aggregating $109,500. Of this sum respondent bondholders received in all $62,500. Payment of the other certificates paid was not traced to the holders thereof, many of them (being payable to bearer) having been collected through the bank patronized by such holder; and no record of the names of such holders was available. The treasurer had also received in payment of assessments, which the statute expressly permitted and authorized, other bonds to the amount of $100,000. The treasurer never issued the bonds which he was authorized to issue, as above set forth; and no proceedings were ever taken to procure a reassessment to supply the deficiency the existence

and enlarging extent of which during his management of the funds became more and more apparent.

Plaintiff insists that the payment in full of these bonds by the treasurer was unwarranted and made in violation of a trust obligation existing for the benefit and protection of the holders of all the bonds to apply these funds ratably upon all bonds, if payment was to be made at all. He also claims that the statute only authorized the treasurer to pay all the bonds from the proceeds of the new issue of bonds authorized to be made by the treasurer, together with the available moneys in his hands as successor of the commissioners; and the payment of a part only from assessment proceeds alone was unauthorized. This claim is based largely upon the primary claim that these assessment funds were charged with a trust in the hands of the treasurer for the benefit of each holder of the bonds in ratable proportion to the extent of his holdings. But it seems to me that this position is not tenable. During all the time that Williams acted as treasurer he had the authority to issue new bonds in an amount sufficient with such assessment funds as he then had on hand to take up all the outstanding bonds of the prior issue. There was also ample power to provide funds by reassessment to supply any deficiency appearing, if the first assessment proved insufficient. The rights of each bondholder were amply protected, and ultimate payment thereof under the circumstances as they then existed assured. It was good business to retire these bonds as fast as available funds were secured because of the high rate of interest they carried, and the negligible amount of interest the funds, if retained by the treasurer, would produce. The rights of those liable to pay a reassessment to cover the deficiency were also to be considered, and the deficiency to be thereby provided for kept as low as possible. The good faith of the treasurer in paying the bonds and also of those whose bonds were paid is admitted. Conceding that the treasurer occupied in relation to these funds the position of a trustee, yet the total trust fund for the payment of these bonds, if it may be so called, embraced in addition to the assessments actually collected, those funds which were to be supplied by a sale of the new issue of treasurer's bonds, which were, in turn, to be paid so far as necessary for the purpose by a new assessment, provision for which was made in the statute. The statute (chapter 620, Laws of 1904) directed the transfer by the city treasurer of all assessment rolls and other property received by him from the commissioners of sewerage to the county treasurer of Monroe county to be thereafter left in the office of and under the control of the latter, and also directed the payment by the former to the latter of all moneys remaining in the former's hands arising from the collection of sewer. assessments. This direction of the statute was complied with by Williams' successor in office. The further collection of unpaid assessments was by this statute intrusted to collectors, appointment of whom was thereby directed, to whom the treasurer of the city of Rochester was also thereby directed to transfer all interest liens or title to any land acquired by the commissioners of sewerage or such treasurer on any sales for unpaid assessments. This statute related to the completion of collection of the original as-

sessment and realization upon property and liens previously secured in enforcing such assessments. It did not in terms provide for reassessment to make up the amount necessary to supply the deficiency resulting from the inadequacy of the first assessment. Whether under the law as it now stands it is possible to obtain a reassessment to supply the deficiency it is unnecessary now to determine. Certainly at the time the payments were made, the validity of which is now attacked, that power did exist; and the rights of the holders of unpaid certificates were then amply secured. If the statute to which I have last referred has unfortunately eliminated all provision for further assessment necessary to complete the scheme of constructing and paying for this sewer, certainly these defendants are in no way responsible for that condition, and their property rights in the moneys paid to and received by them in the utmost good faith when their certificates were retired cannot be taken from them by the indirection or incompleteness of this statutory provision. Their rights are to be determined with reference to the facts, circumstances, and conditions as they were when the payments were made. At that time the payments were properly and legally made by the treasurer from the funds in his hands as I have sought to show. Nothing for which these defendants were not in some way responsible could change the character of the transactions and thereafter make the legal illegal.

Other phases of the controversy as well as that I have set forth above are discussed by Mr. Justice Foote in his opinion (71 Misc. Rep. 552, 129 N. Y. Supp. 491) delivered at Special Term, and I agree with his conclusions.

[2] A point is made that the allowance of costs was unwarranted, and should have been limited to a single bill. Plaintiff asked in his complaint for costs against each defendant separately, except the county treasurer, who is exempted from this demand. Those parties appearing by separate attorneys were awarded separate bills of costs. I think the allowance was well warranted. Their interests were several and appearance by an attorney of his choice was the right of each defendant. His success reasonably entitled him to costs.

The judgment should be affirmed, with costs. All concur. FOOTE, J., not sitting.