[Civ. No. 4764. Third Appellate District.—October 10, 1932.]

C. ROHWER, Petitioner, v. CALIFORNIA GIBSON, as County Treasurer, etc., Respondent; DELAPLANE WILSON, Intervener.

Harry B. Seymour and Clyde H. Brand for Petitioner.

Ralph W. Rutledge for Respondent.

Milton T. Farmer, Athearn, Chandler & Farmer, Frank R. Devlin and Newmiller & Detz, as *Amici Curiae.*

PLUMMER, J.—The petitioner in this action is the owner and holder of 1395 of the outstanding bonds of Reclamation District No. 2057, of the aggregate value of $1,395,000. All of said bonds are dated July 1, 1924, and are of the face value of $1,000 each, bearing interest at the rate of six per cent per annum, payable semi-annually. On July 1, 1932, there became due on each bond the sum of $30, as evidenced by the coupons attached thereto; that on the first day of July, 1932, there became due on the bonds held by your petitioner the sum of $41,850, being the amount of the interest coupons falling due on said date; that the respondent in this action is the County Treasurer of Colusa County, and is the custodian of the bond fund of Reclamation District 2047; that Reclamation District 2047, hereinafter referred to as "Reclamation District", is a duly organized and existing reclamation district under the laws of the state of California existing in Colusa and Glenn Counties, the greater portion thereof existing in the county of Colusa, which county is designated as the main county of said reclamation district; that on the first day of July, 1932, the predecessor in interest of the petitioner presented to said County Treasurer of Colusa County, and custodian of the funds of said reclamation district, all of the coupons herein referred to, and demanded payment of the same by the said County

Treasurer; that the respondent, as Treasurer of said Colusa County, and custodian of the funds of said Reclamation District, thereupon refused, and still continues to refuse, to pay the amount due on said coupons, or any proportion thereof; that thereupon, and after refusal of the respondent to pay said coupons, demand was made for the registration thereof, and said coupons were registered by the respondent by listing the same in a book kept by her designated as "Registration Ledger of Reclamation District No. 2047", and indorsing the fact, and date of registration on the back of said coupons; that on the first day of July, 1932, there was in the bond fund of said reclamation district the sum of $50,742.12 applicable to the payment of interest coupons on the bonds of said reclamation district falling due on said date.

The petition then sets forth that there was due on the first day of July, 1932, on coupons outstanding, the sum of $54,840. The record shows, however, that these figures are inaccurate, and that there was in fact an outstanding indebtedness on coupons falling due on the first day of July, 1932, in the sum of $65,340. The petition concludes with a prayer that a writ be issued by this court directing and commanding the respondent, as custodian of the funds of said reclamation district, to pay to the plaintiff, in cancellation of the coupons referred to, the sum of $41,850, or to show cause why such payment should not be made.

The petition of the intervener, Delaplane Wilson, sets forth that he is the owner and holder of five certain bonds of said reclamation district of the value of $5,000; that said bonds were registered on the first day of June, 1928; that interest became due on said bonds on the first day of July, 1932, in the sum of $150; that demand has been made upon the respondent as custodian of the funds of said reclamation district, for payment, but that no such payment has been made, and that said payment has been refused. The prayer of the intervener is that the respondent be required to pay the interest due on said registered bonds and that priority be given in the making of such payment.

The answer of the respondent sets forth that following the first day of July, 1932, and the eighth day of August, 1932, there had been presented to the respondent for payment additional coupons on bonds of said reclamation dis-

trict, maturing on July 1, 1932, the sum of $20,130, and that demand had been made upon the respondent for payment of the same; that the amount of money on hand in the bond fund of said reclamation district, available for the payment of said coupons of said bonds maturing July 1, 1932, is and was insufficient to pay the coupons so presented, and for which payment was demanded; that the deficiency in the amount of money in the hands of the respondent to pay the total of the interest coupons maturing July 1, 1932, arose by reason of the fact that the installment of the assessment theretofore levied on the several tracts of land in the reclamation district from which said bonds and interest are to be paid, and of which an installment thereof in an amount sufficient to pay said coupons maturing July 1, 1932, plus fifteen per cent allowed for estimated delinquencies, though regularly called, had not been paid on all of the lands lying within said reclamation district; that the tracts of land upon which said call for the payment of an installment of said assessment had become delinquent, had been regularly sold in the manner provided by law, and in large part had been bought in by said respondent as trustee of said reclamation district, and that when redeemed, if they are redeemed or otherwise disposed of, sufficient money will be available to pay all of the coupons maturing July 1, 1932.

It is further shown that if the installments now delinquent on certain tracts of land are paid, or the lands redeemed from delinquent sales, additional sums will come to the hands of the respondent applicable to the payment of said coupons. The record does not show to what extent the delinquencies will affect the ability of the district to pay and discharge all of the coupons maturing on July 1, 1932; nor is there anything of record showing whether any moneys will actually be received by the payment of delinquent taxes, or the sale of the lands upon which delinquent taxes have become due; nor is any time fixed within which such moneys will be, or can be received. In other words, the record leaves us wholly uncertain to what extent the insufficiency of the funds will affect the ability of the district to discharge its obligations. The only certainty shown by the record in relation to the funds of the reclamation district is that the total of the coupons falling due July 1, 1932, and presented for payment, exceeded the money in the hands

of the respondent as custodian of the funds of the reclamation district in the sum of about $15,000, against which demands have been made for payment of coupons of the value of $61,980.

Upon the facts thus presented, what are the rights of the petitioner and intervener? Are they entitled to an order of this court directing full payment of the coupons presented by them, by reason of the fact that they have followed up their demand by this proceeding seeking to compel such payment? Or should the court, recognizing that the money should not be held by the treasurer for an indefinite time, direct payment to the petitioner and intervener of a proportionate share of the moneys in the hands of the treasurer available for payment of matured coupons?

Before reviewing the cases cited by the respective counsel and making their application, the various sections of the Political Code relating to reclamation districts may profitably be compared with the sections of the California irrigation district laws, and their dissimilarity pointed out in order that the holdings of the different cases may be correctly applied to our decision herein. This course is necessitated by reason of the fact that some of the cases cited are based upon reclamation laws and others upon irrigation district laws.

Section 52 of the California irrigation district laws specially provides that matured bonds and interest coupons shall be paid upon presentation. This section was amended after the decision of the Colorado Supreme Court based upon irrigation district laws reading the same as section 52, *supra*, prior to its amendment. The portion of the section referred to reads as follows: "Upon presentation of any matured bond or any matured interest coupon of any bond of the District the treasurer shall pay the same from the bond fund." The section was amended as to time of payment in 1931 (Stats. 1931, p. 172). Section 52, *supra*, also provides that unpaid coupons may be registered and shall bear interest at the rate of seven per cent per annum from the date of presentation for payment until notice is given that funds are available for making such payment. Section 39 of the California irrigation district laws provides for the levy and collection of taxes every year. This levy of taxes is not

made or based upon any benefits theretofore determined as being received by any of the lands within the district. The taxes are levied practically in the same manner as county or municipal taxes, to wit, the value of the land is taken into consideration in making the assessment, and then the taxes levied upon the value of the land in the district sufficient to meet the bond and coupon interest fund, or as it is now called in the act, "the bond fund". The irrigation district laws also provide for enforcing the collection of the taxes in the manner similar to that of collecting county or municipal taxes.

It is further provided in the California irrigation district laws that unpaid registered interest coupons shall be paid in the order of their registration; thus, if at any semi-annual period coupons are presented after the funds have been exhausted by payment of coupons previously presented, the holder of the coupons registered under such circumstances is entitled to priority of payment whenever funds are available therefor. The taxing power conferred by the California irrigation laws continues so long as the district is in existence, and by reason of the fact that unpaid coupons may be registered and thereafter draw interest at an advanced rate, compensation is made to the holder of such coupons for any disadvantage suffered by reason of deferred payments. The reclamation district laws are silent as to many of these provisions. The paragraph of section 3480 of the Political Code establishing a bond fund reads as follows: "All moneys collected by any County Treasurer upon any assessment upon which bonds have been issued, including all moneys derived from sale of land for delinquent installments, or from redemption thereof, or from sale of lands bought by the treasurer at any such sale shall be by such treasurer forthwith paid into the main county treasury, and except as otherwise provided in section 3466a of this Code, shall be credited to the bond fund of such Reclamation District and used exclusively for the payment of principal and interest of said bonds issued on such assessment, and of the principal and interest of any refunding bonds issued thereon." Section 3466a, *supra*, relates to procedure of the sale of lands for delinquent taxes, and need not be further considered herein. Section 3456 of the Political Code con-

tains the procedure to be followed in making assessments of the lands lying within reclamation districts.

After the plans for the reclamation district have been approved and the cost thereof ascertained or estimated, commissioners are appointed to view the lands within the district, and to make an assessment thereon according to the benefits that will accrue to each particular tract by reason of the reclamation. After this is done the amount of the assessment is called at different times and in different installments, as may be necessary to meet the expenses and pay the bonded indebtedness and the interest on the bonds.

Section 3459 of the Political Code authorizes the levying of a supplemental assessment in the event that the original assessment is insufficient to provide for the complete reclamation of the lands of the district, or if further assessments are from time to time required to provide for the protection, maintenance and repair of the reclamation works.

Section 3456, *supra*, also provides that in the levying of taxes there shall be included in incidental expenses an amount necessary for the payment of interest on any refunding bonds that may be issued by the district.

Section 3480, *supra*, also provides that the lien of any unpaid assessment upon which bonds shall have been issued shall continue until all said bonds and any refunding bonds that may be issued shall have been paid in full, and in the event that any bonds are unpaid, a supplemental assessment may be made upon the lands within the district, according to the provisions of section 3459, sufficient to pay the unpaid principal and interest. The supplemental assessment is authorized to be enforced in the same manner as the original assessment.

It will be noted that in the California irrigation district laws there is no limit to the levying of taxes similar to the provisions found in the reclamation district laws. One is a straight levying of taxes from year to year upon the assessed valuation of the property; in the other there is first an assessment placed upon the lands according to the estimated value of the benefits to accrue thereon. When the collection of taxes has reached the value of the benefits conferred upon the lands within the district, there is then no legal provision for placing any additional burdens. In

other words, if under such conditions the bonded indebtedness has not all been paid, there exists no legal provision by means of which the holders thereof may receive payment. Reassessments or supplemental assessments can only be made upon the lands of a reclamation district so that the amount thereof will not exceed the benefit accruing to the lands assessed. (*Kadow* v. *Paul*, 274 U. S. 175 [71 L. Ed. 982, 47 Sup. Ct. Rep. 561].) ██ Nor can any reassessment be made until all the installments covering the original assessment have been called and proceedings taken looking to the collection of delinquent taxes and sales of lands for delinquent taxes fully completed. This is true for the simple reason that it cannot be ascertained what amount is necessary to cover the outstanding indebtedness of the district, reassessment being possible only when the original assessment undervalues the benefits received by the different parcels of land from the reclamation works carried out by the district.

We do not need to consider the provisions of the Political Code relating to refunding bonds, nor to the sections relating to the calling of installments of taxes, further than to say that the assessment mentioned in the section refers to the estimated value of the improvements to the respective tracts of land placed thereon by the commissioners appointed to view the lands of the district, and that the several installments relate to the amount of money called for when the estimate is made as to the sum needed to pay the maturing bonds and maturing interest coupons thereon. The assessment to which we have referred underlies the bond issue, and if the assessment is equal to the benefits accruing to the lands, there is nothing left to support the bond issue to the extent, if and when such bond issue exceeds in value the amount of the assessment.

The provisions of the Political Code relating to the collection of money for the payment of bonds and interest coupons refer only to the collection of installments. The installments are not separate assessments. There is only one assessment, although there may be a number of installments; that is, the payment of the one assessment may be called for at different times and in different amounts until the whole of the assessment has been called for. As we read the Political Code it contemplates that there shall be but one assessment

supporting a bond issue; that the assessment shall be sufficient therefor; and that supplemental or additional assessments can only be made, as we have stated, when such supplemental or additional assessments will not exceed the value of the benefits accruing or conferred.

A reading of the different Political Code provisions prescribing the procedure to be followed in enforcing the payment of any particular installment shows very clearly that a long time must necessarily intervene between the calling of the installment and the realization, if ever, of the collection of any delinquent taxes.

Section 3466a, *supra,* after providing for the sale of lands upon which taxes had become delinquent, empowers the trustees of the district, when the land has been sold to the treasurer as trustee, to manage and control the land, lease it out to tenants upon such reasonable rental as may be determined upon, and the revenues derived therefrom credited to the particular delinquent tract.

From this *résumé* of the Political Code it is evident that the holders of unpaid bonds have no speedy or adequate remedy; that the process of levying supplemental or additional assessments is not only long and tedious, but involves court proceedings and uncertainties which readily distinguish the right of such bondholders from the holders of bonds issued under and in pursuance of the irrigation laws of the state. These contingencies and differences we think differentiate the one from the other so that equitable principles which might not apply to one may be readily invoked and applied in the other in order that bondholders may have equal treatment and no one given special advantages.

The differences in the laws relating to irrigation districts and reclamation districts in other states from the code provisions of California must be kept in mind in considering the cases having to do with bonds of different districts. In the case of *State ex rel. Bliss et al.* v. *Grand River Drainage Dist. of Livingston and Linn Counties,* (Mo.) 49 S. W. (2d) 121, 125, the Supreme Court of Missouri, in an action in *mandamus,* brought for the purpose of compelling payment of interest coupons, we find the following: "This Statute (referring to the Act of 1929), clearly contemplates that the taxing power with which a Drainage District is vested

shall be so exercised as to make provision for the payment in full of all bonds which it authorizes. It does not appear from the record here that the power with which respondent Drainage District is armed, to assess, levy and collect taxes for the purpose of paying its bonds and the interest thereon, has been exhausted, nor that the future exercise of that power will not be fruitful in obtaining the necessary funds. On the contrary, it is admitted 'that the proper officers of said district and of said Livingston and Linn Counties are now engaged in collecting said taxes levied and assessed as aforesaid'. In these circumstances the equitable doctrine of equality as applied in the apportionment among creditors of the funds and assets of an insolvent debtor is without application. It is also within the contemplation of the Statute, as shown by various and sundry of its provisions, that taxes levied by a drainage district may become delinquent, and that because of such delinquency bonds issued by it may not be paid at their maturity. Yet, the statute is wholly silent as to preferences or priorities as between the holders of matured bonds, when the funds at a given time are not sufficient to pay all. Nor does it contain a requirement, or even an intimation, that none of such bondholders shall be paid until funds are available to pay all. On the contrary, by the clearest implications it places upon the Board of Supervisors the imperative duty to pay matured and maturing bonds and interest instalments as long and as often as funds are available for that purpose."

The opinion in the Grand River Drainage District case further states that if the district were a private corporation with definite ascertainable assets, and those assets insufficient, when liquidated, to meet its obligations to creditors, principles of equitable adjustment could probably be invoked, but that the district was a municipal corporation with general assets, etc., and that its indebtedness was payable solely from a special fund to be derived from taxation of lands lying within the boundaries of the district.

The circumstances of the Grand River Drainage District case are not similar to those presented here. In the former case it is shown that the officers are proceeding with the collection of the taxes, and the court there was justified in assuming that a sufficient amount to pay all the maturing

obligations would be realized. Here, it is shown that taxes have gone delinquent, that sales have been made and the realization of sufficient funds depends upon many contingencies, to wit, whether the lands will be redeemed; whether the lands can be sold to pay the taxes; and whether the lands that have been bought in by the treasurer as trustee of the district, can be disposed of, or, as we have seen, managed by the trustees of the district in such a way as to realize any revenues therefrom. In any event, realization of funds is dependent on postponed events which may never take place.

Again, section 10788 of the Revised Statutes of Missouri providing for the issue of bonds by reclamation districts makes all the deferred interest coupons interest-bearing, that is to say, whenever an interest coupon is presented for payment, and funds are not sufficient to redeem the same, that coupon bears interest from the date of its presentation for payment until it is paid. The reading of the section is as follows: "All bonds and coupons not paid at maturity shall bear interest at the rate of 6 per cent per annum from maturity until paid, or until sufficient funds have been deposited at the place of payment, and the said interest shall be apportioned by the Board of Supervisors out of the penalties and interest collected on delinquent taxes, or any other available funds of the District." There is no similar provision in the Political Code of this state. Under the California reclamation laws interest coupons do not bear interest, and the holder thereof is not compensated for any delay caused by payment to a bondholder who has previously presented his interest coupons for payment and exhausted the fund available therefor.

The opinion of the court in the Grand River Drainage District case, *supra,* does not indicate that the court had before it or considered any question as to the moneys collected on account of the special improvement assessment being a trust fund to which all bondholders must look for payment, and to payment out of which each bondholder was equally entitled. That money paid into the hands of a depositary on account of improvement assessments is a trust fund is supported by all the authorities, some of which we will hereafter cite.

If the holders of bonds issued by the district stood upon an equality immediately preceding the filing of a petition for a writ of mandate by one of them, we do not perceive how the rights of any of the bondholders can be changed by reason of any such action. In the instant case it appears that there is in the hands of the respondent, as the custodian of the moneys received on account of the assessment levied on the lands within reclamation district 2047, sufficient to pay approximately seventy-five per cent of the matured interest coupons. Each bondholder holding matured coupons is entitled to his equal proportion of that sum, and to have payment made to him of that sum. Thus, if the petitioner in this case was entitled only to a payment of seventy-five per cent of the amount of the interest accrued upon the coupons held by him, how can it be concluded that he is entitled, either equitably, legally or logically, to enhance his payment twenty-five per cent simply by filing a petition praying for a writ of mandate? As we understand the law, a writ of mandate must be based upon an existing right, and that existing right can neither be enhanced nor lessened by the filing of a petition praying for such writ. Hence, the right of the petitioner to only seventy-five per cent of the payment upon his coupons out of the trust fund was and is the right upon which his petition is based. That the petitioner may be entitled to full payment or remedies that may exist against the district, is an entirely different proposition from demanding payment out of the trust fund in the hands of the custodian, other or greater than the equitable proportion to which he is entitled.

In the cases of *Meyer* v. *Porter,* 65 Cal. 67 [2 Pac. 884], and *Meyer* v. *Widber,* 126 Cal. 252 [58 Pac. 532], payment was allowed in full in *mandamus* proceedings, but an examination of those cases discloses that what we are here presenting was not considered. The opinions in those cases entirely overlooked the fact which exists in this case of the moneys collected upon a special assessment constituting a trust fund.

Some weight appears to have been given in the Widber case to the fact that six months elapsed before any of the coupon holders had instituted an action; nor is there any-

thing in either one of the cases indicating that there were any circumstances showing that full payment of the bonds would probably never be made. So far as those cases are concerned the fund, to all intents and purposes, was spoken of as though it were inexhaustible, and in the Widber case, that the coupon holders might otherwise have been compensated; all of which distinguishes the two California cases just cited from the circumstances with which we are dealing.

In *Bates* v. *McHenry,* 123 Cal. App. 81 [10 Pac. (2d) 1038], relied upon by the petitioner, this court was dealing exclusively with the irrigation laws which we have pointed out as being essentially dissimilar in its provisions from the reclamation district laws. We there called attention to the particular wording of section 52 of the irrigation district laws, as amended in 1931 (Stats. 1931, p. 172), section 1, wherein the irrigation laws were amended providing that bonds and interest coupons should be paid upon presentation. Unpaid bonds and coupons could be registered, bear interest and thereafter take priority in payment. Those questions are not involved here.

Again, the moneys raised to pay the indebtedness of an irrigation district depend upon an inexhaustible taxing power which may be continued from year to year until all outstanding obligations are discharged. Under the reclamation laws this is not the case. A special fund, fixed by a special assessment, depending in its amount upon benefits conferred, is created for the redemption of the bonded indebtedness of the district. The holder of a bond against an irrigation district receives compensation on account of deferred payments, and at the same time relies upon the inexhaustible taxing power of the district. The holder of a bond issued by a reclamation district has simply one fund raised, as we have stated, out of which he may expect payment, and the taxing power is limited and circumscribed, and cannot constitutionally go beyond the benefits conferred upon the land.

It follows from these considerations that while if it were necessary to reaffirm everything said in the case of *Bates* v. *McHenry, supra,* that case would not be controlling here by reason of the differing provisions of the acts of the legislature involved in the respective cases.

In the Bates case, *supra,* this court called attention to the holding of the Colorado Supreme Court, *Thomas* v. *Patterson County Treasurer, etc.,* 61 Colo. 547 [159 Pac. 34], and the case of *Norris et al.* v. *Montezuma Irr. Dist. et al.,* (C. C. A.) 248 Fed. 369, in which cases the Irrigation District Law of the state of Colorado, being similar in its provisions relative to the payment of bonds and interest coupons, with the reclamation law of this state, it was held that as there was no priority between bondholders, one bondholder could not maintain *mandamus* proceedings to compel payment in full of his interest coupons to the exclusion of others who are equally entitled to payment. Those cases distinguished by this court in the case of *Bates* v. *McHenry, supra,* are authority for the holding here that priority should not be given to any coupon holder by reason of the fact that he is first in filing a petition for a writ of mandate; that his right was only to a proportionate share of the trust fund, a right which could not be enhanced, but might be enforced by *mandamus* proceedings. We may here state that *mandamus* is a prerogative writ and should never be used by the court to effectuate an injustice, but only to prevent a failure of justice (16 Cal. Jur. 764) ; and while the writ may always be employed to enforce a right, we have not been able to discover any authority holding that the writ may be used to enhance a right.

The circumstances under which a writ of mandate will be issued requiring payment in full, are clearly stated in the opinion of the Supreme Court of Florida in the case of *State ex rel. Gillespie et al.* v. *Carlton et al.,* (Fla.) 138 South. 612, to wit: "To support relator's contentions in this respect, there appear to be many adjudicated cases which hold that the rule is that, when a fund has accrued in the hands of a debtor which is insufficient to pay all bonds payable out of such fund, one bondholder of the series for which the raising of such fund was pledged when the bonds were issued may have his bonds ordered paid in full from the funds in his debtor's hands, even though the fund, at the time of bringing suit, is not sufficient to pay all the outstanding bonds then matured, it appearing that the funds in hand are accruals from the exercise of an *inexhaustible* power of taxation, and that the whole fund required, of

which the fund in hand is but a part, is replenishable by the further exercise of the *inexhaustible* taxing power, thereby enabling the debtor to ultimately pay all who may have claims against the fund as a whole. (*City of Galena* v. *United States ex rel. Amy*, 5 Wall. 705 [18 L. Ed. 560]; *City of New Orleans* v. *United States ex rel. Stewart*, 49 Fed. 40 (C. C. A., 5th Circuit); *Meyer* v. *Porter*, 65 Cal. 67 [2 Pac. 884]; *Ward* v. *Piper*, 69 Kan. 773 [77 Pac. 699, 700]; *Voorhies* v. *Mayor etc. of City of Houston*, 70 Tex. 331 [7 S. W. 679]; *United States ex rel. Dana* v. *Village of Kent*, (C. C., N. D. Ohio) 107 Fed. 190; *City of Austin* v. *Cahill*, 99 Tex. 172 [88 S. W. 542, 89 S. W. 552]; *State ex rel.* v. *City of New Orleans*, 37 La. Ann. 13 (cited with approval in *City of New Orleans* v. *United States ex rel., supra*); *Select and Common Councils of City of Williamsport* v. *Commonwealth*, 90 Pa. 498; *Henrylyn Irr. Dist.* v. *Thomas*, 66 Colo. 300 [181 Pac. 980]; *Hook* v. *German American Bank*, 152 App. Div. 253 [136 N. Y. Supp. 1019].)'' The fund in that case was found to be not inexhaustible, and the writ applied for was denied.

In the recent case of *Meyers et al.* v. *City of Idaho Falls et al.*, 52 Idaho, 81 [11 Pac. (2d) 626], the Supreme Court of Idaho, in considering the nature of the fund collected on account of special improvement assessments, held as follows: ''Under the statute the municipality had the power to levy the entire cost of each improvement in one assessment. Its officers chose, however, to issue bonds for a ten-year period. The bonds succeed to the lien of the original assessment, and the assessments thereafter levied and collected are a 'trust fund pledged by law for the payment of the bonds'. (*Jewell* v. *City of Superior*, (C. C. A.) 135 Fed. 19.) The only duty with which the city officials are charged is the levying of assessments and payment of the funds collected to the bondholders (*More* v. *City of Nampa*, (C. C. A.) 18 Fed. (2d) 860), and there is no contention that the city has not fulfilled its obligation in this connection. The deficiencies which exist have arisen because the owners of certain parcels of property within each district failed to pay their assessments and general taxes, and the property reverted to the county, freed of the liens of the bonds. It follows, as hereinbefore stated, that the funds

collected by the city by means of special assessments are trust funds, pledged to the payment of the bonds issued against each district. Public improvement bonds are instrumentalities for the spreading of local improvement assessments over a period of years, and the maintenance of the lien therefor against the property benefited. Assessments collected are public funds, impressed with a trust in favor of the bondholders. (*Jewell* v. *City of Superior, supra.*)"

In addition to the foregoing cases holding such moneys to be trust funds, we may also cite the following: *Conway* v. *City of Chicago,* 237 Ill. 128 [86 N. E. 619]; *Wells* v. *Village of Wilmette,* 193 Ill. App. 30; *People* v. *Flynn,* 265 Ill. 414 [106 N. E. 961].

In the case of *Roschild* v. *Village of Calumet Park,* 262 Ill. App. 96, an action to enforce *pro rata* payment of bonds and interest coupons based upon a special assessment, it was held that the court might properly direct payment of a certain percentage of the moneys held by the treasurer or custodian of such funds, so as to pay to each bondholder his proportionate share of the trust fund.

In *People ex rel. Security Trust Co. of Rochester* v. *Treasurer of Monroe County,* 191 N. Y. 15 [83 N. E. 661], the Court of Appeals of the State of New York upheld a *mandamus* proceeding directing the payment of a percentage of the moneys collected based upon a special improvement assessment, where the moneys were insufficient to pay the entire indebtedness, holding that the bondholders were entitled to be paid such percentage *pro rata* out of the moneys in possession of the treasurer; that such distribution should not be delayed indefinitely or await the possibility of collecting all of the assessment, or until sufficient funds might possibly be collected to make payment in full. The procedure pointed out in that case, and also in the case decided by the appellate court of Illinois, *supra,* seems to us to be both just and equitable. ▪ The holding of those cases is to the effect that the treasurer or custodian of the funds collected on account of the special assessment may properly be required to pay, out of the funds so collected, to each of the bondholders, his proportionate share thereof, and that *mandamus* is a proper remedy; that the person bringing the *mandamus* proceeding is entitled only to his propor-

tionate share; that the issuance of the writ is dependent upon there being a showing that there is sufficient money in the hands of the treasurer or custodian to make a substantial *pro rata* distribution. In the New York case the amount distributed approximated thirty per cent of the outstanding indebtedness.

It appearing from the record in this case that the respondent now has in her possession as custodian of the funds of Reclamation District No. 2047, the sum of $50,878.50, against which there is an outstanding indebtedness due and payable in the sum of $65,340, distribution can be made of a substantial sum to the respective bondholders, and that at least payment can be made to the extent of 75 cents on each dollar of the indebtedness evidenced by the interest coupons now due.

It is therefore ordered that a writ of mandate issue directing the respondent to make payment in that sum to the petitioner herein, and also to the intervener.

Thompson (R. L.), J., concurred.