THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Relator, *v.* HORACE G. PIERCE, LYMAN OTIS, WILLIAM A. WOODWORTH, JOHN McKIE and CHARLES A. BRADY, as Commissioners of Sewerage for the Tenth, Fifteenth and Twentieth Wards in the City of Rochester and the Town of Gates, Respondents.

(Supreme Court, Monroe Equity Term, August, 1918.)

Bonds — city of Rochester — power of commissioners appointed by Laws 1892, chap. 603, in relation to west side sewer — constitutional law — when peremptory writ of mandamus granted.

It was not intended by any legislation, affecting the west side sewer of the city of Rochester, enacted subsequently to chapter 603 of the Laws of 1892, to do away with the power and duty of the commissioners, appointed pursuant thereto, to reassess and raise by tax on the territory affected, and which is having the benefit of the sewer, sufficient moneys to pay bonds originally issued to pay for the sewer and remaining unpaid; had it been the intent by such subsequent legislation to do away with the power and duty of the commissioners to reassess, such

344 Peo. ex rel. Equitable L. Assur. Soc. v. Pierce.

Supreme Court, August, 1918. [Vol. 104.

legislation would have been unconstitutional as impairing the obligation of a contract.

The fact that after the original appointment of said commissioners the legislature placed the matter of paying for the sewer, first, in the hands of the city treasurer, and then in the hands of the treasurer of Monroe county, did not deprive said commissioners of the power to levy a further assessment to pay for bonds they had issued.

An innocent purchaser and holder of certain of said bonds, which have not been paid, will be granted a peremptory writ of mandamus directing the commissioners to levy a further assessment to provide funds for the payment of the balance due on the bonds held by him.

Application for writ of mandamus.

Alexander & Green (Clifton P. Williamson, of counsel), for relator.

Lynn Brothers (William F. Lynn, of counsel), for respondents.

Clark, J. The relator is the owner of 228 six per cent assessment bonds, issued by the commissioners of sewerage for the tenth, fifteenth and twentieth wards of Rochester and the town of Gates. The bonds were dated August 1, 1896, and became due February 1, 1904. They were issued in pursuance of the provisions of chapter 603 of the Laws of 1892, and the several acts amendatory thereof and supplementary thereto.

The bonds held by relator have not been paid and there is due relator for principal and interest on these bonds something in the neighborhood of $130,000, and, as there are no funds available to pay that indebtedness, relator asks for a writ of mandamus requiring the commissioners to levy a further assessment to provide funds for the payment of the balance due on the bonds.

The respondents contend in substance that the commissioners have no power to levy a new assessment to provide funds for the payment of the amount remaining due and unpaid on the outstanding bonds, because subsequent legislation placed the matter of the sewer in question and paying therefor in the hands, first, of the treasurer of the city of Rochester, and then the treasurer of Monroe county, and all the powers of the commissioners of sewerage thereupon ceased.

The act under which these bonds were issued (Laws of 1892, chap. 603), after providing for the construction of the so-called west side sewer and for the appointment of the commissioners to determine the location, extent and character of the sewer, the area bounded thereby and the preparation of assessment rolls, and levy and collection of the assessment, also empowered the commissioners to issue the bonds or certificates of indebtedness in question, and further provided for and directed " a re-assessment in the event that the first should prove insufficient."

By chapter 438 of the Laws of 1895, there was further legislation amending chapter 603 of the Laws of 1892, providing for the appointment of two additional commissioners to be designated by the town board of the town of Gates.

By chapter 315 of the Laws of 1898, there was further legislation on the subject, and that act provided that the commissioners transfer to the treasurer of the city of Rochester all their records, assessment rolls and moneys collected thereon with reference to this sewer matter, and said act further provided " whereupon the powers and duties of the said commissioners under the said act shall cease, except as *hereinafter provided.*" This act authorized the treasurer of the city of Rochester to issue new assessment bonds up to the amount of $400,000, and with the proceeds to

redeem and cancel the assessment bonds which had been theretofore issued by the commissioners. This the treasurer of the city of Rochester never did.

By chapter 620 of the Laws of 1904, the county judge of Monroe county, or special county judge, was authorized to appoint two collectors for the purpose of collecting and enforcing payment of the assessments levied by the commissioners. It also provided that when the collectors took office, June 23, 1904, the city treasurer of the city of Rochester should deliver to the county treasurer of Monroe county all assessment rolls and other property received by him from said commissioners of sewerage, and that he should pay to the county treasurer of Monroe county all sums of money remaining in his hands arising from the collection of assessments for said west side sewer. These collectors were likewise authorized to enforce payment of all uncollected assessments, and to maintain actions for the purpose of foreclosing the liens of said assessments, and they were required at stated intervals to pay all moneys collected by them to the treasurer of Monroe county, and to render their accounts every three months to the County Court of Monroe county.

The act further provided that when the collectors should have collected all moneys due upon the assessments, and should have in the judgment of the County Court of Monroe county exhausted every available means for such collection, and should have accounted for all moneys collected by them, and paid to the county treasurer of Monroe county all such moneys to be paid over, the County Court of Monroe county could by order discharge said collectors and the sureties upon their bond from further duties and liabilities.

It was established in this case that these collectors had qualified, made certain collections, turned over the

moneys collected by them to the treasurer of Monroe
county, and that they had made final accounts which
had been settled in the Monroe County Court, and that
they had been discharged in accordance with the pro-
visions of chapter 620 of the Laws of 1904.

By the provisions of this act any powers theretofore
conferred upon the treasurer of the city of Rochester
by the provisions of chapter 315 of the Laws of 1898
were taken away, and it was established on the trial
that the first assessment had been entirely exhausted,
and was insufficient to pay the bonds issued for the
construction of the sewer.

Notwithstanding the fact that subsequent legisla-
tion, after the original appointment of these sewerage
commissioners in pursuance of chapter 603 of the
Laws of 1892, placed the matter of paying for the
west side sewer, first in the hands of the treasurer of
the city of Rochester, and then in the hands of the
treasurer of Monroe county, I do not think it deprived
the commissioners of the power to levy a further
assessment to pay for the bonds they issued.

This sewer was constructed in pursuance of the pro-
visions of chapter 603 of the Laws of 1892, and the
bonds in question were issued in pursuance of the
terms of that statute to pay therefor. There was no
credit of any municipality pledged for the payment of
the bonds, and those holding them must look for pay-
ment to the assessment fund. The work has been done
and the bonds issued in pursuance of the terms of the
statute, and the property owners in the territory
affected are enjoying the benefits of the sewer. The
act under which it was constructed distinctly provided
for a further assessment in case the amounts raised
by the first assessment were insufficient to pay for the
sewer. The precise condition has arisen in this case.
The moneys raised by the first assessment were insuffi-

cient to pay for the sewer, and relator asks that a reassessment be made to the end that the lands enjoying the benefits of the sewer shall pay for it, and that an entirely innocent holder of the bonds which had been legally issued for the construction of the sewer should not be the loser.

The power of the commissioners appointed under the acts of 1892 (chap. 603), and 1895 (chap. 438), has not been affected by any subsequent legislation. It was not the legislative intent to put it beyond the power of the commissioners to levy a further assessment in order to pay for this sewer in case the amount collected from the first assessment should prove to be insufficient for that purpose. The possibility of a reassessment for the purpose of paying any deficiency that might arise is seen all through the legislation touching the subject of this west side sewer. This is so even as late as the act of 1904 (chap. 620), for by section 1 of that act it was provided that the collectors were "to have jurisdiction over and charge of the collection and enforcement of all of said west side sewer assessments which have been *heretofore levied,*" and it is a fair inference that it was the legislative intent to have every means adopted to enforce the collection of assessments previously made, leaving unimpaired the right and duty of the commissioners to order reassessments to provide for any deficiency.

The bonds were dated August 1, 1896, and constituted a contract which the bondholders could enforce under the laws existing at that time. Any subsequent legislation which impaired the obligation of those bonds, which were contracts, would have been clearly in violation both of the State and Federal Constitutions. *People ex rel. Security Trust Co.* v. *Treasurer of Monroe County,* 191 N. Y. 15; U. S. Const. art. 1, § 10; N. Y. Const. art. 1, § 6; *Hook* v. *German Ameri-*

*can Bank,* 152 App. Div. 256; Cooley Const. Lim. 414.

The legislature by the act authorizing the construction of this sewer had plainly and distinctly authorized the issue of the bonds in question to pay for it, and to reassess and levy another tax on the territory affected in case the amount collected from the first assessment should be insufficient to pay for the sewer.

Relator bought these bonds and is a holder in good faith, and it has a right to insist that the contract which resulted from the issue and purchase of these bonds should be enforced in good faith. The legislature by subsequent acts could not do away with the power to levy another assessment to provide for any deficiency unless it destroyed the contract made when the bonds in question were issued.

It is my opinion that the relator is entitled to the mandamus asked for; that it was not the legislative intent by any legislation affecting the west side sewer, enacted subsequently to the act of 1892, to do away with the power and duty of the commissioners to reassess and raise by tax on the territory affected, and which is having the benefit of the sewer, sufficient moneys to pay the bonds originally issued, and which remain unpaid, part of which are in the hands of the relator as an entirely innocent purchaser and holder. And that, even if any subsequent legislation could be construed as doing away with the power and duty of the commissioners to reassess, it would be in violation of both the State and Federal Constitutions as impairing the obligation of contracts. 28 Cyc. 1661; *State* v. *New Orleans,* 37 La. Ann. 528.

A peremptory writ of mandamus should issue in accordance with the provisions of the alternative writ.

Ordered accordingly.