[Civ. No. 4952.   Third Appellate District.—July 31, 1933.]

FREDERICK F. COOPER et al., Petitioners, v. CALIFOR-
NIA GIBSON, as County Treasurer, etc., Respondent;
RIVER FARMS COMPANY OF CALIFORNIA et al.,
Interveners.

Athearn, Chandler & Farmer and Frank R. Devlin for Petitioners.

Ralph W. Rutledge for Respondent.

Devlin, Devlin & Diepenbrock and H. B. Wolff for Interveners.

PLUMMER, J.—Reclamation District No. 108, hereinafter referred to as "Reclamation District", is now, and was at

all the times hereinafter mentioned, a reclamation district organized and existing under and pursuant to the laws of the state of California, situate in the counties of Colusa and Yolo, the greater portion of which is situate in the county of Colusa. The respondent California Gibson is, and at all the times hereinafter mentioned was, the duly elected, qualified and acting treasurer of the county of Colusa, and as such, custodian of the bond fund of Reclamation District No. 108; that subsequent to the organization of said Reclamation District, to wit, on or about 1925, said Reclamation District duly authorized, issued and sold bonds in the aggregate par value of $3,142,000, all dated the first day of January, 1925, bearing interest at the rate of six per cent per annum, payable semi-annually on the first day of January and the first day of July of each year during the term of said bonds; that said bonds and the whole thereof were sold and issued by said Reclamation District; that the principal of said bonds mature serially from January 1, 1935, to and including the first day of January, 1943; said bonds having attached thereto interest coupons payable on the first day of January and the first day of July during said term; that of the bonds so issued there have been surrendered and canceled bonds of the par value of $9,025.

The petitioners in this action constitute what is called a bondholders' protective committee, organized and existing for the purpose of protecting the interest of owners of bonds issued by said district; said committee having under its control bonds of said district in the par value of $695,000, together with all interest coupons on said bonds maturing July 1, 1932, and of all subsequent interest-maturing dates subsequent thereto. The agreement under which said committee is organized authorizes and empowers the committee to take any and all actions and institute all proceedings that may be considered proper, etc., in order to procure the payment of the principal and interest on said bonds. The petition in this action schedules the number of all of the bonds so held and controlled by the committee specifying that each bond is of the par value of $1,000, and that the interest coupons attached thereto are all in the sum of $30 each, specifying that the county treasurer of Colusa County will. pay to the holder thereof, out of the funds of said

Reclamation District, the sum of $30 at and on the respective dates mentioned in said interest coupons.

The petition further sets forth that on the second day of May, 1933, there were outstanding unpaid coupons due on July 1, 1932, to the number of 2,092, each in the sum of $30, and on January 1, 1933, there were likewise outstanding and unpaid additional interest coupons to the number of 2,128, each in the sum of $30.

The petition then sets forth the number of coupons held by the committee, and the face value thereof, which became due and payable on July 1, 1932, and also of the coupons held by said committee, which became due and payable on January 1, 1933, and which coupons are still outstanding and unpaid.

The record shows that the respondent, as treasurer of Colusa County and custodian of the bond fund of said Reclamation District, has in her possession the sum of $33,616.18, of which sum $14,588.07 was realized as the result of a call duly and regularly made by said treasurer of an installment due upon the reclamation assessment theretofore levied upon the lands of said district, which installment was called for the purpose of paying the coupons of said district maturing on July 1, 1932. That of said $33,616.18, the sum of $18,478.11 was realized as the result of an installment called by the respondent with which to make payment of the coupons maturing January 1, 1933.

It further appears that of said last-mentioned sum of $18,478.11, $8,000 thereof was derived from the delinquent sale of certain lands belonging to the intervener River Farms Company of California for failure to pay an installment called for the purpose of paying interest coupons maturing on January 1, 1933.

The proceeding leading up to the receipt of said $8,000 appears to have been as follows: On or about the first day of October, 1932, the respondent, pursuant to the provisions of section 3480 of the Political Code, made a call for the payment of an installment on the assessment theretofore levied upon the lands belonging to the River Farms Company of California, as intervener (which for convenience will be called "River Farms Company", which designation will also include John D. McGilvray, the receiver of said company), in the sum of $1833.81; that said intervener did not, nor did

any owner of the property, or anyone interested in the property belonging to the intervener pay, or offer to pay, said installment, and that upon the expiration of the time mentioned in said section of the Political Code, said call became delinquent and the respondent, on the twenty-second day of December, 1932, at the hour of 2 P. M., after having given notice thereof as required by law, offered the property belonging to the intervener known as "Parcel No. 54-B" for sale, and at such sale one Zumwalt became the purchaser thereof for the sum of $8,000. That thereupon the respondent in this action received said sum from said Zumwalt and issued to him a certificate of sale for said parcel of land known as "54-B".

The record further shows that prior to the sale just mentioned, to wit, on October 1, 1931, an installment in the sum of $1593.75 was called, and the assessment of parcel No. 54-B which subsequently became delinquent, and that on or about the twenty-ninth day of December, 1931, after regular proceedings had been taken and had therefor, said parcel was sold on account of the failure of the owner of said parcel of land, or anyone interested therein, to pay said installment, at which sale the treasurer of said county bought in said parcel for the benefit of said Reclamation District.

The record further shows that on April 1, 1932, a call for the payment of an installment of the assessment levied upon said parcel No. 54-B in the sum of $1813.68, was made. This installment not having been paid, said parcel No. 54-B was, on or about the twenty-ninth day of June, 1932, again sold and bid in by the respondent for the benefit of said district.

It further appears from the record that the intervener, River Farms Company, has redeemed said parcel of land known as "No. 54-B", from the sale thereof made on or about the twenty-ninth day of December, 1931, on account of delinquency in the payment of the call made on or about the first day of October, 1931. So far as the record before us appears, there is nothing to indicate that any redemption has been made from the sale of said parcel No. 54-B, made on or about the twenty-ninth day of June, 1932, on account of delinquency in payment of the installment called on the first day of April, 1932.

Upon this proceeding we have first to consider whether the moneys received upon the respective calls to which we have referred are earmarked and appropriated to a specific purpose, to wit, to the payment of the interest coupons falling due on July 1, 1932, and the interest coupons falling due on January 1, 1933, and should be applied only to the payment of coupons falling due following the interest date for which the respective calls were made; that is, that the money received on account of an installment called to pay interest coupons falling due on July 1, 1932, should be applied only to the payment of such coupons, and that the money received for and on account of the installment call to make payment upon the interest coupons falling due January 1, 1933, should be applied only to the payment of such coupons.

The contested questions relate to the validity of the third sale made of said parcel No. 54–B, at which sale one Zumwalt paid therefor the sum of $8,000, and received from the respondent a certificate of sale; the disposition of the $8,000 received on account of said sale; whether it should be added to the bond fund of Reclamation District and made available for payment to holders of interest coupons; whether the interveners are entitled to the surplus remaining of said $8,000, after the payment of the amount of the third call herein referred to in the sum of $1832.81, after adding thereto interest and penalties as provided by law.

These questions involve the further issue of whether the court should, upon a *mandamus* proceeding, pass upon the rights and titles of persons who are not parties to this proceeding; and likewise, whether the court in a *mandamus* proceeding, should order the distribution of a fund, the right to the retention of which, by the respondent, is a matter of dispute.

The right and duty of the court in this proceeding to order distribution of that portion of the fund in the possession of the respondent as custodian of the bond fund of the Reclamation District, is fully answered by the opinion of this court in the case of *Rohwer* v. *Gibson,* 126 Cal. App. 707 [14 Pac. (2d) 1051], and need not be restated herein.

Section 3480, *supra,* contains no provision for supplementing the call for an installment to pay interest coupons falling due upon the date specified in the call in the

event that the amount of money realized on account of said call proves insufficient to meet the amount of interest coupons so falling due. The only provision in the section which can possibly be construed as relating thereto is the one providing as follows: ''The lien of unpaid assessments upon which bonds shall have been issued shall continue until all said bonds and any refunding bonds which may be issued shall have been ·paid in full, and if for any reason any part of' such principal or interest of said bonds or of refunding bonds, shall remain unpaid after enforcement of said assessment as in this article provided, the board of supervisors of the main county shall order an additional or supplemental assessment to be made as provided in section 3459, sufficient to pay such unpaid principal and interest; which additional or supplemental assessment shall be enforced and collected in the same manner as the original assessment.'' This portion of the section presupposes a lapse of time coincident with the falling due of the last of the serial bonds and the interest coupons thereon. The reasonable construction of this language would be that if any portion of the assessment remains unpaid at said date, and any portion of the principal of the bonds, or of the interest that may have accrued during the series of years that the bonds have been outstanding, then and in that case the unpaid portion of the assessment might be enforced for the making of such payment, and if the assessment has been fully paid by the respective land owners, recourse must be had to a supplemental assessment covering the amount of principal and interest on the bonds left unpaid by the previous proceeding taken and had to enforce payment. Applied to the situation here presented, there is no other provision for making payment for any balance that may remain unpaid of the interest coupons falling due on a certain date after the moneys received for making payment thereof, pursuant to the call, has been applied toward such payment.

■ That the interest coupons falling due upon a certain date and the call made for their payment stand alone and are independent of both previous and subsequent calls, and that there can be no tacking of a subsequent call to a prior call, and that such was the intent of the legislature appears from the following paragraph contained in section 3480, supra, to wit: ''At least ninety days before any interest

date of the bonds, including refunding bonds, the county treasurer of the main county shall estimate the amount of money necessary to pay interest and principal maturing on such interest date, after crediting thereon the funds in the treasury applicable to the payment thereof, and shall add thereto 15 per cent of such aggregate sum to cover possible delinquencies, and said county treasurer shall thereupon cause to be published two times, to-wit, once a week for two weeks in some newspaper of general circulation published in each county in which any of the district may be situate, a notice substantially as follows:'' (Here follows the form of the call.)

The inference to be drawn from this paragraph of the section is that the county treasurer shall estimate the amount necessary to meet the interest falling due at a certain date, and shall call such portion of the assessment as may be necessary to make payment thereof. If the amount realized is over and above the sum necessary to meet an interest payment, then, and in that event, the money in the bond fund shall be included by the county treasurer in making his estimate of the amount necessary to make payment of the interest coupons for which the installment is called.

There is no provision in the paragraph which we have quoted nor in any other paragraph, save and except as hereinbefore stated, covering the subject of a deficiency to meet interest payments. That this is the correct interpretation of the intent of the legislature appears from the fact that the subject and provisions of section 3480, *supra,* sets up the necessary machinery and procedure for enforcing each installment call, and contains no provision for enforcing collective installment calls.

We conclude, therefore, that the money received on account of each call is so far earmarked that if ordered distributed, it should be ordered distributed so as to apply the money received on account of the call intended to make payment of the interest coupons falling due on July 1, 1932, to the payment of such interest coupons only, and that the moneys received on account of an installment call intended to raise money for the payment of interest coupons falling due on January 1, 1933, should be applied to the payment of such interest coupons only.

No procedure being set forth in the statutes for calling assessments to pay any deficiency in the amount realized to meet the semi-annual interest payments, it may be that a court of equity would have jurisdiction of an action instituted for the purpose of requiring the treasurer to make an additional or supplemental installment call for the purpose of carrying such deficiency.

As to the appropriation of the moneys received from the leasing or operation of lands, the titles to which have become vested in the district, it would appear that the money so received should be first applied to the payment of the interest due coincident with the period when the installment intended for the payment of such interest became delinquent. This would seem to be the intention of the legislature by the language used in paragraph 3480, *supra,* wherein the treasurer, in making his estimate of the amount necessary to pay interest and principal maturing on any date, is directed to credit such funds in the treasury to the payment of such interest and principal. In other words, the amount on hand so received is to be applied to the payment of the interest and principal falling due, to pay which the installment call is made and becomes a part of the fund available for such purpose.

Was the respondent, as treasurer of Reclamation District, without legal authority to make sale of parcel No. 54–B, on the twenty-second day of December, 1932, by reason of the delinquency in making payment of the installment called on the first day of October, 1932? So far as the record is before us, it discloses title to said parcel of land as vested in the River Farms Company on the first day of October, 1931, at the date of the first call mentioned herein. It likewise discloses the title vested in the River Farms Company on the first day of April, 1932, the date of the second installment call considered herein; and also, that the title to said parcel No. 54–B was vested in the River Farms Company on the first day of October, 1932, the date of the third installment presented for our consideration. Likewise, it appears from the record that on the twenty-second day of December, 1932, title was still vested to parcel No. 54–B in the River Farms Company.

Redemption is alleged to have been made by the intervener as to the first installment mentioned herein called on

the first day of October, 1931. The record is silent as to any redemption following the second installment call made the first day of April, 1932. It is likewise silent as to any deed having been made transferring title to said property from the River Farms Company to the Reclamation District. The record showing no divestiture of title by reason of any delinquent sales, it follows that the several installment calls were properly made, irrespective of the fact that a prior delinquency had been suffered by the River Farms Company.

The form of the notice required to be given by the treasurer is directed to "all assessed landowners of said district", and at the date of the respective calls and the several notices given in pursuance thereof, the lands involved in this action were owned by the River Farms Company. ▆▆ A certificate of sale only had been issued by the treasurer on account of sales made following each delinquency, but a certificate of sale is not a conveyance of title and is only an evidence that the person named therein is entitled to receive the property free from any claims of the former owner in the event that the owner does not avail himself, or itself, of the privilege given by the statutes of paying the amount of the installment, together with certain specified penalties, within one year from the date of sale. The right given under the code provisions, to the treasurer as trustee for the district, is simply a power of sale for a particular purpose, to wit: raising money to cover the amount of the installment, interest and penalties mentioned. This procedure follows each delinquency suffered subsequent to an installment call, and the title remains in the owner until a deed of conveyance is made by the county treasurer, either to an individual purchaser or to the district, by reason of failure of individual purchasers to bid for the lands burdened with the delinquency. ▆▆ Even this deed does not relieve the lands from the lien of the assessment. Under the provisions of the code the lien of the assessment continues until it is fully paid. Thus, while a deed executed and delivered by reason of failure of the owner to redeem, following a subsequent sale, cuts off or destroys the right of a purchaser at a prior sale to receive a deed to the premises, and also takes precedence of a prior deed, the lien of the assessment is neither diminished nor discharged. This

seems to us clear from the following language found in one of the paragraphs of section 3480, *supra,* to wit: "which deed shall convey to the grantee therein named the land, free and clear of all incumbrances, except state, county and municipal taxes and taxes or assessments of irrigation, conservation or water storage districts, and except any portion of any reclamation assessment remaining unpaid at the date of such sale".

The only exemption as to the calling of installments is made when the property has been conveyed to the county treasurer as trustee of the district. Even after the land has been conveyed to the county treasurer as trustee of the district, and by the district subsequently sold, the lien of the assessment immediately comes into full force and effect with the same operative power against the lands, as though no sale had been made. The deed can only be made subject to the payment "of the amount for which the parcel of land was bid in by the treasurer at the delinquent sale, with interest thereon at the rate of 7 per cent per annum, compounded yearly from the date of said delinquent sale, and also the amount of all subsequent installments then delinquent with accrued interest and penalties thereon". It is then provided "that the deed to such purchaser upon such sale, conveys said property free of encumbrance, except state, county and municipal taxes, and the unpaid balance of said assessment".

Under the various provisions of the code which we have cited, the lien of the assessment, so far as the owners of the land assessed are concerned, so far as purchasers at delinquent sales may be affected, and also including purchasers from the district of the lands which have been sold and conveyed to the district, the lien of the assessment for the unpaid portion thereof still exists. Any other construction of the code provisions would permit an owner, by suffering an installment call to go delinquent, to escape payment of a portion of the assessment levied upon his lands. The levy is made upon the lands of the respective owners according to the benefits conferred, and each land owner owes it to every other land owner in the district to make payment of his proportionate share, and the construction of the code provisions which we have given carries out, we think, the intention of the legislature that no tract of land shall be

relieved of the burden so imposed upon it, save and except by making full payment.

We conclude from this *résumé* of the code provisions that the district, and respondent as the county treasurer of the county of Colusa, had a legal right to make sale of parcel No. 54–B on the twenty-second day of December, 1932.

That a tax deed, latest in time, is prior in right, is the law of this state, as set forth in the opinion in the case of *Anderson* v. *Ryder*, 46 Cal. 135. Other cases might be cited from other jurisdictions, supporting what we have just stated, but as the California case has never been modified, it is unnecessary to make further citations.

Our conclusion that the respondent, as trustee for Reclamation District, had the legal right to exercise the power of sale vested in him on December 22, 1932, is not intended to express any views of the court as to whether the River Farms Company might or might not, in an action brought for that purpose, have said sale set aside as voidable. In such a proceeding, however, equity being claimed by the River Farms Company, equitable action on its part would also be required of making payment of the amount of the delinquent installment for which the land was sold, and the costs and penalties legally attaching thereto, thus leaving in the funds of the district the amount of the installment, together with the penalties, whether such moneys were moneys paid by the purchaser Zumwalt or moneys paid by the River Farms Company in complying with equitable principles upon its part.

This leaves undisposed of $6,167.19 of the $8,000 bid by Zumwalt for parcel No. 54–B. The petitioners claim that the writ of mandate prayed for herein, if issued, should direct that this sum be distributed in payment upon the interest coupons due as heretofore stated in this opinion. A portion of the River Farms Company contention is to the effect that the sale is absolutely void, and another portion of its contention is that the company is entitled to the surplus.

Section 3466 of the Political Code as it read in 1920, and also as it now reads, having to do with sales on account of delinquent installments called on account of assessments where no bonds have been issued or are outstanding, contains the following: ''Out of the proceeds of said sale the county treasurer shall place the amount due on said prop-

erty as shown in said notice, in the proper funds of said district, and shall pay to the owner of said property any surplus remaining.'' No such provision is found in section 3480, *supra*. █ There is, however, a principle of law involved which we think controlling here: That the land owner must first ratify the sale before it can claim any portion of the surplus. If the sale of parcel No. 54–B to Zumwalt should be set aside upon proceedings taken by the River Farms Company for that purpose, it is evident that the surplus would not belong to the River Farms Company. Whether it would belong to Zumwalt or to the district is a question which we cannot definitely decide here, for the reason that Zumwalt is not a party to this action and will not be included in the order, for reasons hereinafter stated.

The principles which we are stating are succinctly set forth in 61 C. J., page 1213, section 1641, showing when the owner is entitled to the surplus, and where his accepting any portion of the surplus presupposes, and is based upon a ratification of the sale. A number of cases are cited in the footnotes to section 1641, *supra,* including Cooley on Taxation, volume 3, fourth edition, page 2443, section 1436. Also the case of *Shattuck* v. *Smith*, 6 N. D. 56 [69 N. W. 5], is called to our attention by counsel both for the petitioners and for the River Farms Company.

█ The following language, to wit: ''All moneys collected by any county treasurer upon any assessment upon which bonds shall have been issued, including all moneys derived from sale of land for delinquent instalments or from redemption thereof, or from sale of land bought by the treasurer at any such sale shall be, by such treasurer forthwith paid into the main county treasury,'' etc., contained in section 3480, *supra,* is not an enlargement of the right of the Reclamation District to receive any moneys to which it would otherwise not be entitled, nor does it confer upon the Reclamation District any additional title to moneys so paid into the bond fund, nor is it an enlargement of the purposes for which the county treasurer may exercise the powers of sale elsewhere conferred upon him by the section from which we have quoted. █ A direction to pay over money and a further provision for its use cannot be construed as a transmutation of title. The only rational interpretation to be given to the language which we have just

quoted is that it refers exclusively to moneys where the right thereto and the ownership thereof are unquestioned.

Without elaborating further upon this point, there appears to us no ratification of the sale made of parcel No. 54–B on the twenty-second day of December, 1932, and the River Farms Company is not in a position to claim any portion of the surplus. There seems to us a clear line of demarkation between the right of the district upon lands sold on account of a delinquent assessment and lands sold by the district after it has acquired a title thereto. ▮▮▮ When lands have been sold and conveyed to the district, and title thus vested unconditionally in the district, it seems to us clear that the district has a right to sell the land for the highest possible sum that it can obtain for the same, and appropriate to its own uses and purposes every dollar received from such sale.

This view is upheld in the case of *Furrey* v. *Lautz,* 162 Cal. 397 [122 Pac. 1073], an instance where the title was vested. That was an instance where the taxing power had obtained an indefeasible title and made sale of its own property. As we have stated, the power of sale vested in the county treasurer by section 3480, *supra,* for the benefit of the district has for its purpose one object, just as the power of sale in a trust deed or mortgage, to wit: The realizing of a sum sufficient to pay the amount of money then due, including penalties and costs. That is, the money to which the district is entitled. Any other conclusion would lead to the imposition upon the land owner of a more onerous burden than contemplated when the assessment was levied upon his land, to wit: That he should pay for the benefits conferred upon his property.

The redemption clause in section 3480 is general in its terms, reading as follows: "Any person interested in the said property may redeem the same at any time within one year after the date of sale by paying to the county treasurer for such purchase a sum equal to the purchase price stated in the certificate, with interest thereon at the rate of seven per cent per annum from the date of sale of such redemption." This leads us back to the price for which the county treasurer, representing the district, is entitled to obtain by the exercise of the power of sale. This does not trench upon the rights of any of the bondholders. All the

bondholders are entitled to, is to have the assessment upon each particular tract of land fully paid; that is the lien provided for by the codes and the security to which each bondholder is entitled to look. In the event that the redemption is not made and the county treasurer becomes the holder of the legal title for the benefit of the district, then and in that event the district, for the benefit of the bondholders, is entitled to sell the land for any sum that it may obtain, as such sales does not place any additional burden upon the landholder. ▆▆ Not having exercised the right of redemption and having allowed the title to pass into the district, his rights, of course, are forever foreclosed.

In determining the right of the district to moneys realized upon sales, the distinction must be clearly kept in mind between sales made following delinquent installments and sales made after title has become vested in the district or in the county treasurer as trustee for the district. In the one instance the district is entitled to have sale made for a specific purpose. In the other, to have sale made to obtain all the money possible.

The legislature has fixed the penalties and costs that must be paid by a redemptioner after allowing an installment to go delinquent and we are not aware of any rule of law or principle of equity that would permit penalties and costs fixed by the legislature to be increased by any action of the county treasurer. Nor do we know of any rule of law or principle of equity which would permit bondholders to increase the value of their security at the expense of the land owner seeking to redeem his property from a delinquent sale. ▆▆ The principle of law applicable to the sale of lands for delinquent taxes in the state of California, we think, in the absence of any specific statute, should be applied to the sale of lands in reclamation districts. In sales of land made by other tax-collecting officials in the state of California, it is a prerequisite that the sale of the smallest parcel of land must be made that will discharge the delinquent tax penalties and costs. Applied to a sale of a reclamation district where the whole tract is burdened with an assessment, it would require the sale to be made only for the amount chargeable against the tract. Otherwise, any land owner in a reclamation district whose financial condition prevented his meeting the installment calls until after

a sale had been made, might be required to pay two or three times the amount of the installment call or lose his land entirely. The cases having to do with the fixing of penalties by legislatures do not lay a basis for the enhancement of a penalty by a county treasurer making sale, or by persons bidding for the land upon an installment sale. If the land had been sold and conveyed to the county treasurer, as trustee for the district, then, as we have stated, the sale may be made for the highest obtainable price.

As the case is presented to us, we do not deem it necessary to go further into the constitutional questions presented, nor to cite the various decisions affecting the constitutionality of the different provisions of section 3480, *supra*.

Finally, should the writ of mandate issue herein to the full extent prayed for by the petitioners? This question is answered in the negative by the rule stated in 38 C. J., page 558, section 30, where the text reads: *"Mandamus* will not as a general rule issue, where the rights of third persons not parties would be injuriously affected. Where questions of grave importance concerning rights of persons who have had no opportunity to be heard are involved in *mandamus* proceedings, the court, in the exercise of its sound judicial discretion, may refuse the writ, although it is an appropriate remedy." This precise question was passed upon by this court in the case of *Spurrier* v. *Neumiller,* 37 Cal. App. 683 [174 Pac. 338], where it is said: *"Mandamus* will not lie where its effect would be inequitable or unjust as to third persons, or will introduce confusion, or will not promote substantial justice." To the same effect is the case of *Board of Education* v. *San Diego,* 128 Cal. 369 [60 Pac. 976]. See, also, 16 California Jurisprudence, page 780, section 14.

It follows, therefore, from what we have said, that in the calculation of the fund to be distributed in payment of the interest coupons alleged to be due, there should be deducted therefrom the sum of $6,167.19.

Following this deduction it is ordered that the writ prayed for be issued, directing the respondent as custodian of the funds of Reclamation District, to make distribution of the remaining funds in her hands, in accordance with the opinion of this court.

By reason of the conclusions at which we have arrived, the amount of money available for payment set forth in the petition on file herein must be revised.

It is therefore ordered that counsel for petitioners prepare the form of an order to be made by this court, specifically directing the amount of payments to be made and the percentage to be paid upon each interest coupon.

Pullen, P. J., and Thompson, J., concurred.