[Civ. No. 5080. Third Appellate District.—July 25, 1934.]

WALTER J. SELBY, Petitioner, v. OAKDALE IRRIGATION DISTRICT et al., Respondents; FRANK WEEDEN et al., Interveners.

W. Coburn Cook for Petitioner.

Griffin & Boone for Respondents.

Orrick, Palmer & Dahlquist for Interveners.

THE COURT.—This cause is before us upon the application of the above-named petitioner praying that a writ of mandate issue out of this court directing and commanding the respondents to pay out of the funds held by said district, to the holders of bonds and interest coupons which have become due, in the order in which they have been presented, and in particular commanding the respondents to apply to such purposes the proceeds arising from taxes collected pursuant to a levy made by the board of directors of said district on the twenty-seventh day of September, 1933, for the fiscal year 1933–1934, and that such payment be made in accordance with the provisions of section 52 of the California Irrigation District Act, in the order of presentation, whether the presentation be of matured bonds, or of matured interest coupons, and that the same be made without reference to any preference or discrimination, whether the same be classified as refunded or unrefunded bonds, or coupons thereon, and that payment be made in full, in the order of their presentation, upon bonds and coupons which became due on January 1, 1934, before payment be made upon any bonds or coupons maturing after that date.

The petition sets forth that on the first day of July, 1910, the Oakdale Irrigation District was a duly organized and existing irrigation district under the laws of the state of California, and on or about said date authorized the issuance of bonds in the sum of $2,320,000; that of said issue of bonds the petitioner is the owner of bonds of the par value of $15,000, bearing five per cent interest, which bonds of the value of $9,500 matured on July 1, 1932, and of bonds of the value of $5,500, which matured on July 1, 1933; that said bonds were duly presented for payment to Madlyn M. Rydberg, as treasurer of said district, and payment thereof

refused, save and except that one-half of the interest due January 1, 1932, and July 31, 1932, was paid, and that there is now due and unpaid on the matured coupons on said bonds the sum of $700, as well as the principal thereof. It also sets forth that the petitioner is the owner of other bonds of the value of $1,000, upon which interest coupons in the sum of $180 are past due; that said coupons have been duly presented to the respondent-treasurer, and payment thereof refused, save and except as to one-half of the interest due thereon; that the respondent, as treasurer of said district, has refused, and at the time of the presentation of said bonds and coupons and demand made therefor, refused to register said bonds and coupons as provided for in section 52 of the California Irrigation District Act.

It further appears from the petition that on or about December, 1932, the board of directors of the Oakdale Irrigation District provided for the issuing of refunding bonds, pursuant to the act of the legislature approved May 12, 1931, and that about ninety-six per cent of the bonds of said district issued before that date have been refunded; that the refunding bonds are classified in four divisions, divisions one and two being known as "serial bonds", divisions three and four being known as "sinking fund bonds".

It further appears that about four per cent of the original bonds are unrefunded, of which the petitioner is the owner to the extent hereinbefore set forth. The record before us also shows that on or about the sixth day of June, 1933, the board of directors transferred from the bond fund of said district, to the general fund, the sum of $4,367.74.

The record further shows that on or about the twenty-seventh day of September, 1933, the board of directors of the Oakdale Irrigation District adopted a resolution fixing the tax rate and making a levy therefor; a part of its resolution is the basis of the controversy in this proceeding, to wit:

"Whereas, it appearing to the Board that it is necessary to levy an assessment in an amount sufficient to raise the interest due or that will become due on outstanding bonds of the District on the first day of the next ensuing January, and on the first day of the next ensuing July, when outstanding bonds of the District on which said interest is to be paid are hereby declared to be the following, to wit: First

Refunding Bonds of the Oakdale Irrigation District, Division No. 3; and, First Refunding Bonds of the Oakdale Irrigation District, Division No. 4; and which interest will have to be paid at said times, and said amount of interest, which the Board believes sufficient, and is sufficient to be raised by this assessment for said purposes by this assessment is the sum of $60,000.00, and said assessment is levied for the payment of said interest, and said interest only, and for no other purpose."

The petition further alleges that the officers of said district have entered into a conspiracy for the purpose of compelling the petitioner to accept refunding bonds for the issue of bonds held by him, and have entered into a conspiracy to prevent the petitioner from receiving any payment upon the matured bonds held by him, and also to prevent the petitioner receiving payment upon any of the matured coupons owned by him. Respondents have filed no answer herein, but have appeared and demurred to the petition on the ground that it does not state facts sufficient to constitute a cause of action.

Upon application therefor, Carlton A. Johanson, personally, and Frank Weeden, H. L. Byram, W. E. Cashman, Livingston B. Keplinger and Charles E. MacLean, constituting the Oakdale Irrigation District Bondholders' Committee, were allowed to appear and intervene in this cause.

While the briefs of counsel have taken a somewhat wider range, only three questions are really presented for determination, to wit: First: The right of the parties to prosecute this action; second: The validity of the limiting clause of the resolution providing for the tax levy under date of September 27, 1933, to wit: First refunding bonds of the Oakdale Irrigation District, Division No. 3, and first refunding bonds of the Oakdale Irrigation District, Division No. 4; and third: The right of the petitioner to have unpaid bonds and coupons paid, as provided for in section 52, *supra,* and if not paid in full, registered.

 As to the right of the parties to prosecute this action we agree with counsel that section 113 (Stats. 1933, p. 800), added to the California Irrigation District Act by an act of the legislature approved May 9, 1933, is ineffective for any purpose. Its unconstitutionality is so apparent that citation of authority seems needless. However, we refer to

section 1 of article I, subdivision 3 of section 25 of article IV, sections 4 and 4 (b) of article VI, sections 16 and 21 of article I of the Constitution, and the fourteenth amendment to the Constitution of the United States. The act in question attempts to limit the right of anyone to bring a proceeding such as this or other proceeding against the board of directors of an irrigation district unless the holders of ten per cent or more of the duly issued outstanding and unpaid bonds of the district join in such action, etc. It is evident that the legislature has no power to limit the right of anyone whose property interests have been invaded, to seek redress through the courts unless joined by others owning like property.

A reading of the record discloses that the board of directors of the Oakdale Irrigation District, the board of supervisors of the county of Stanislaus, in which said district is situated, and also that the district attorney of said county have failed and neglected to comply with the provisions of sections 39, 39 (b) and 39 (c) of the California Irrigation District Act, and that the treasurer of Stanislaus County has failed and refused to comply with the provisions of section 52 of said act. In these particulars it is urged by the interveners that the petitioner should have instituted *mandamus* proceedings against the respective officers to compel performance of their statutory duties, and especially should have prosecuted an action against the directors of the district to compel them to levy a tax for the benefit of holders of unrefunded bonds.

We may admit that the petitioner might have maintained such a proceeding against the board of directors immediately after September 27, 1933. This admission, however, does not lead to the conclusion that any unauthorized limitation of the purposes of the tax levy, or any unauthorized attempted preference is thereby conceded to be valid, or that such portion of the attempted levy is legally any part or parcel thereof.

We have read all the acts of the legislature beginning with the act of 1897, down to and including the acts of the legislature of 1933, and fail to find a single clause, sentence or word giving to, or indicating that the board of directors of an irrigation district is invested with any power or authority to discriminate between bondholders in levying taxes

178

for the payment either of principal or interest; nor has our attention been called to any such provision in the various statutes. ■ Interveners have cited various cases supporting the statement of the law that a tax levy for a particular purpose cannot be diverted and applied to the uses of any other purpose. The conclusion, however, which would seem to be insisted upon by the interveners does not follow that the board of directors or other tax-levying body has the power of levying taxes in such a way as to give a preference, or to apply the proceeds of such levy to a particular purpose, contrary to the express provisions of the statutes. The authorities cited and properly analyzed support the conclusion that when the statute under which the tax-levying board has acted, prescribes what shall be done, and grants the power to act in a particular manner, all actions different therefrom dependent simply upon the whim, wish or determination of the tax-levying body are *ultra vires,* and the act taken can only stand in so far as it complies with the express authority given and provided for by law.

■ While the petition alleges that the preference attempted to be given the resolution of September 27, 1933, was the result of a conspiracy to coerce and defraud holders of unrefunded bonds, we do not deem it necessary to give any consideration to such allegations, for the simple reason that if the attempted preference is void, its invalidity would not be affected one way or the other by either the good faith or the bad faith of the taxing power. If the act is void as being *ultra vires,* the motive behind the act becomes wholly immaterial.

In the case of *City of Austin* v. *Cahill,* 99 Tex. 172 [88 S. W. 542, 89 S. W. 552], relied upon by the interveners to support the preference attempted to be given by the tax levy of September 27, 1933, it appears that the court had under consideration a refunding act, which refunding act expressly provided for the levying by the taxing board of a tax to pay the interest and principal of the refunding bonds. In that case the court quotes language and cites authorities to the effect that a legislative act providing for the levy of a tax for a specific purpose must be followed.

In *Meriweather* v. *Garrett,* 102 U. S. 472 [26 L. Ed. 197], it appears that the holders of bonds upon which interest coupons have not been paid, issued by the city of Memphis,

had obtained judgments directing the levy of a tax to pay such judgments, and it was held that the funds so obtained could not be diverted to any other purpose.

In *Carter* v. *Tilghman*, 119 Cal. 104 [51 Pac. 34], it was held that money raised from taxes levied for a particular purpose, pursuant to an affirmative vote of the district, could not be diverted by the directors of the district to other purposes or into other channels than that so specially authorized.

That the legislative act limits, controls and circumscribes the taxing power of the board of directors is further supported by the following language found in 61 C. J. 521, to wit: "Taxes which are set apart by the Constitution of the state for particular uses cannot be diverted by the legislature to any other purpose. Neither can funds derived from taxes, levied and collected for particular purposes, be legally utilized for, or diverted to any other purpose. . . . Thus, it was held: 'Where the law provides that money raised by the taxation of particular property in a municipality shall be held by the County Treasurer as a sinking fund for the redemption of bonds issued by that municipality in aid of a railroad, the money so raised is appropriated to the specific purpose mentioned, and cannot be diverted to any other.' "

Without reviewing further the authorities cited by the interveners, it is sufficient to say that all of them are to the effect that where the Constitution, statute or ordinance provides for the levying of a tax, specifying the purpose, the purpose specified is both the mode and the measure of the power that can be legally exercised by the taxing body, and any attempt to go outside thereof is and must be held ineffective.

Beginning with the act of the legislature approved March 31, 1897 (Stats. 1897, p. 254), section 39 has remained practically unchanged in the power given to the board of directors of an irrigation district to levy taxes, in providing for payment of interest on bonds and the principal of bonds as they mature. As originally adopted the portion of the section material here reads: "The Board of Directors shall then levy an assessment sufficient to raise the annual interest on the outstanding bonds, and in any year in which any bonds shall fall due, must increase said assessment to an

amount sufficient to raise a sum sufficient to pay the principal of the outstanding bonds as they mature." The latest wording of the section as amended March 30, 1931 (Stats. 1931, p. 122), is as follows: "The Board of Directors shall then, within 15 days after the close of its session as a Board of Equalization, levy an assessment upon the lands within the District in an amount sufficient to raise the interest due, or that will become due on all outstanding bonds of the District on the first day of the next ensuing January and the first day of the next ensuing July," etc. The verbal change does not alter the legal effect of the language used. The original section read: "Annual interest on the outstanding bonds." The section as it now reads in this particular inserts the word "all", making it read: "on all outstanding bonds". The word "all", expressing the intent of the legislature more fully, came into the section as early as 1919, and has remained therein ever since.

In 26 California Jurisprudence, page 403, the text, supported by authorities cited in the footnotes, defined the powers of directors of an irrigation district as follows: "An Irrigation District has only such powers as are given it by law, and must exercise those powers conferred, in the manner prescribed." (*Hewell* v. *Hogan,* 3 Cal. App. 248 [84 Pac. 1002].)

As to how the taxing power shall be exercised is thus further defined in 61 C. J., page 555: "Subject to the requirement that all taxes to be valid must be levied for a public purpose, the particular purpose for which taxes may be levied by the taxing authority depends upon the terms of the statute granting the power, such as for the purpose of paying lawfully contracted debts and expenses, or taxes due to the state. But the power of such authorities to levy taxes may be restricted by statute or a constitutional provision, except for certain specified purposes, and when so restricted, taxes cannot be levied for any other purpose than those specified."

Section 39, *supra,* specifies that the board of directors shall levy a tax covering *all* the interest coupons falling due, not a part or parcel thereof, within the discretion of the taxing board. The statute means just exactly what it says—"all", and not a part. Therefore, any attempt at limitation must be held ineffective. The board of directors

of the Oakdale Irrigation District had the power to levy a tax. That they did not levy a sufficient tax to meet the requirements, did not follow the statute, and attempted to give a void preference, does not lead to the conclusion that the money so raised may not properly be applied to the payment of either the principal on matured bonds or of the interest on matured coupons. The debt is chargeable against the district; it is money owing to the creditors holding evidences of debt in the form of bonds, and being voluntarily paid, in so far as the same has been paid, constitutes a fund properly applicable to the payment of both the matured bonds of the district and also the matured interest coupons, irrespective of the date of their issue.

That the board of directors has no power to diminish the bond fund or the bond interest fund by the transfer of moneys is held in the cases of *Hewell* v. *Hogan, supra,* and *Carter* v. *Tilghman, supra.* This appears to be conceded by all the parties to this proceeding. That the law in effect at the time of the issuance of the bonds, entered into the contract and became a part thereof, is considered at length in the case of *Hershey* v. *Cole,* 130 Cal. App. 683 [20 Pac. (2d) 972], to which we need only refer, and call attention to the authorities there cited.

This disposes of all questions as to the change in section 67 of the Irrigation Act naming different funds, as under the authorities cited the contractual rights held by the petitioner cannot be affected thereby.

In *Bates* v. *McHenry,* 123 Cal. App. 81 [10 Pac. (2d) 1038], this court said: "There is no priority given under the statute to any of the bonds issued by the Irrigation District." That statement applied strictly to the circumstances there presented. Nor do we think from the record presented in this case that section 40 of the Act of 1897, *supra,* has any application. That section reads: "The assessment upon real property is a lien against the property assessed from and after the first Monday in March, for any year, and the lien for the bonds of any issue shall be a preferred lien to that for any subsequent issue, and such lien is not removed, until the assessments are paid or the property sold for the payment thereof." This section was amended in 1917 (Stats. 1917, p. 768), so as to read: "The assessment upon land is a lien upon the property assessed

from and after the first Monday in March of any year.'' In the instant case it appears that the bonds held by the petitioner were issued in 1910, but it also appears that a large percentage of the refunding bonds now held by the interveners and others are simply converted bonds of issues preceding the amendment of the section in 1917, and if justice required, a court of equity would be, we think, justified in holding that the prior lien, if any, given to the issues preceding the amendment, was carried over, entered into, and became a substantive part of the refunding bonds, just as the lien created by an original mortgage is carried over and becomes an integral part of the instrument renewing the security given to insure payment of the original obligation.

As pointed out in *Cooper* v. *Gibson*, 133 Cal. App. 532 [24 Pac. (2d) 952], and followed in *Kimball* v. *Hastings' Tract Reclamation Dist.*, 137 Cal. App. 687 [31 Pac. (2d) 417], there is a marked distinction between installment calls made on assessments in reclamation districts and taxes levied by a board of directors of an irrigation district. In a reclamation district the installment calls are earmarked by reason of the provisions of the statutes.

Likewise, in the case of *Rohrer* v. *Gibson*, 126 Cal. App. 707 [14 Pac. (2d) 1051], this court held that there being no provision in the law relating to reclamation districts providing for the order in which interest coupons or bonds should be paid, the obligations should be marshaled and the moneys on hand apportioned. Here, again, there is a marked distinction between the reclamation laws and the Irrigation Act. Section 52 of the Irrigation Act, as we held in *Bates* v. *McHenry*, *supra*, provides for the order of payment, and if not paid, for the registration of both bonds and interest coupons, and that thereafter payment shall be made in the order of registration.

No order directing any priority of payment can be made herein for the simple reason that the stipulation of facts shows that the treasurer of the district has neglected to keep a record of the registration of any interest coupons or bonds, other than of unpaid interest coupons on refunding bonds, and it cannot be determined without the taking of testimony, as to the time when interest coupons were presented by the petitioner and registration thereof demanded

and refused. Nor can we, at the present time, by reason of the absence of such facts, determine whether the petitioner has lost his standing or order in the line of payment provided for in section 21, *supra*.

■ The petitioner, and as well, the interveners, are entitled to the mandate of this court directing a return of the amount of moneys transferred by the directors of the district from what is called the "Bond Interest Fund", to the general fund. The petitioner is also entitled to an order of this court holding the attempted preference referred to in the tax levy void, and the same is hereby held to be void.

For the purpose of being able to pass definitely upon the rights of the parties hereto, and the order in which payment should be made,—

It is hereby ordered that the cause be submitted to a referee for the purpose of taking testimony to determine the amount of money on hand, subject to payment of both matured bonds and matured interest coupons outstanding against the district, and the time when matured bonds and matured interest coupons have been presented to the treasurer for payment and for registration, and to report to this court findings thereon. Counsel for the petitioner will prepare the form of an order for such reference, and until the return of the referee's finding after the taking of such testimony, this cause will stand over for such further orders as may appear to be just and necessary.

■ Though discussed by counsel, the fact that the bonded indebtedness of the district and the low price of farm products indicate that both bondholders and property owners are suffering, and probably will suffer excessive losses, we do not find that such facts should enter into or determine the rights of the respective bondholders as to what moneys there may be on hand for making payment of the legal obligations of the district. Nor do we consider it necessary to enter into a discussion of the equities urged by the petitioner in favor of bondholders who furnished the money to complete the works carrying out the plans of the irrigation district to furnish water to the respective landholders, without which the productivity of the lands within the district would be materially lessened, as the rights of the petitioner in this proceeding must rest upon the provisions of the Irrigation District Act.