[Civ. No. 6424.   Third Appellate District.—December 7, 1940.]

REED J. BEKINS et al., as Trustees, etc., Respondents, v. FRED H. HEIKEN, as County Treasurer, etc., et al., Appellants.

Hewitt & McBride, and Huston, Huston & Huston for Appellants.

W. Coburn Cook for Respondents.

PULLEN, P. J.—At all the times herein mentioned petitioners were the owners and holders of matured bonds and coupons of Reclamation District No. 1500 in the sum of $12,260.

Immediately prior to the commencement of these proceedings these matured bonds and interest coupons were pre-

sented to the respondent treasurer for payment, which was refused, however, upon the ground that at the time there was not sufficient money in the bond fund of the district to pay all of the outstanding matured bonds and coupons of the district. It did appear, however, that there was at that time, and at the time of the hearing of this petition, enough money in the hands of the treasurer to pay in full all outstanding unpaid matured bonds and coupons, which were obligations against the several allocations of said funds under the respective calls from July 1, 1932, to July 1, 1938, inclusive, except as to calls representing obligations maturing January 1, 1938, and July 1, 1938. The bonds owned by petitioners matured January 1, 1936, and January 1, 1938, and bore interest coupons which had become due January 1, 1935, and each six months thereafter up to and including July 1, 1938.

On September 30, 1938 (the petition herein was filed October 20, 1938), there was outstanding $40,000 of the first issue of this district's bonds (which series was dated January 1, 1920), and by October 19, 1938, that issue had been reduced to $18,000. On January 1, 1930, the district had put out refunding bonds in the sum of $2,930,000, all of which latter issue was outstanding but not due.

It is also a matter of record that out of approximately 65,000 acres, the district was, at the date of the hearing of this matter, the owner of approximately 4,900 acres, which had vested under delinquent assessments of the first issue of bonds, and that some 6,800 acres were delinquent under the same issue, but were still subject to redemption.

The trial court found that neither the district nor the funds of the district were insolvent, and entered judgment that petitioners were entitled to a peremptory writ of mandate directing the respondent treasurer to pay to petitioners the sum of $3,000, being the amount of the first issue bonds held by petitioners which matured January 1, 1936, with interest at the rate of six per cent per annum from January 1, 1936, to date of payment, and the coupons which matured January 1, 1935, to and including July 1, 1937, in the amount of $5,070, and also to pay to petitioners the bonds which matured January 1, 1938, in the sum of $2,000 and coupons appurtenant thereto, maturing in 1938, in the sum of $2,190, *pro rata* with other obligations against the same calls, and that there should be added to the amount appurtenant to said

calls or funds for maturities of the year 1938, any unused portion of the bond fund resulting from the proceeds of assessments and prior calls after payment of all obligations against such prior calls. From that judgment this appeal is taken.

It was stipulated at the trial that on September 30, 1938, the district was in default in the sum of $119,620, interest coupons and bonds, and at that time its treasurer had in cash on hand $86,663.97.

From those figures appellants assert the district is insolvent, and contend that regardless of any other assets that might belong to the district, or any power to levy a supplementary assessment, the matured bonds and coupons are not entitled to payment in full, but only in proration with all other bonds, both matured and unmatured.

With this we cannot agree. Sections 3479 and 3480 of the Political Code, indicate a method whereby the trustees of a reclamation district may, if such district is indebted, arrange with its creditors for a refunding of such indebtedness or for the levying of an additional or supplemental assessment, and as long as the law affords a complete and adequate remedy, and in the absence of any showing that such powers are inadequate to produce sufficient to meet its obligations, this court cannot under its equity jurisdiction direct a *pro rata* participation by the holder of unmatured bonds in funds earmarked for a special purpose.

In *Rohwer* v. *Gibson,* 126 Cal. App. 707 [14 Pac. (2d) 1051], the fund was insufficient to pay in full both of two claimants each holding matured unpaid interest coupons. There was approximately $50,000 in the treasury against which there were outstanding obligations due and payable of some $65,000. The court held the claimants were not entitled to collect in full but that all holders of matured coupons should share ratably in the fund.

In *Cooper* v. *Gibson,* 133 Cal. App. 532 [24 Pac. (2d) 952], involving certain interest payments, there was in the possession of the treasurer the sum of $126,000 in matured coupons, and something less than $30,000 from which to make the interest payments. About one-half of the money in the fund was earmarked to pay coupons due July 1, 1932, and a lesser amount to pay the coupons due January, 1933. The court

had before it the question of the order of payment of past due coupons of different maturities, and there said:

"We conclude, therefore, that the money received on account of each call is so far earmarked that if ordered distributed, it should be ordered distributed so as to apply the money received on account of the call intended to make payment of the interest coupons falling due on July 1, 1932, to the payment of such interest coupons only, and that the moneys received on account of an installment call intended to raise money for the payment of interest coupons falling due on January 1, 1933, should be applied to the payment of such interest coupons only."

In *Kimball et al.* v. *Hastings Tract, etc.*, 137 Cal. App. 687 [31 Pac. (2d) 417], an appeal was taken from a mandate of the superior court ordering distribution to others than those for whom the funds were collected.

A call in the sum of $52,000 together with an additional 15 per cent to cover possible delinquencies, was issued to retire certain outstanding bonds and interest in the sum of $52,000. This call brought into the treasury approximately $49,000, leaving a delinquency of approximately $10,000. After application of some $45,000 to payment of the particular bonds and coupons as specified in the call, there still remained about $4,000 in the special bond fund. Holders of other bonds asked that the balance be applied to the payment of their obligations although a portion of the bonds and interest for which the assessment was originally levied still remained unpaid. The order there was:

"It follows that the undisturbed portion of the fund, amounting to the sum of $4,477.30, which remains in the hands of the treasurer for the designated purpose of applying it to future obligations, as directed by the trial court, should be prorated and applied towards the immediate payment of the specified matured bonds and the accrued interest thereon, in the proportion which said undisturbed sum of $4,477.30 bears to the unpaid items of principal and interest which are contained therein as specified in the call for the assessment."

Thus in the foregoing cases the matured bonds and interest coupons were permitted to participate in the proration to the exclusion of the unmatured or undesignated bonds. The same principle was applied in the following cases.

In *Bank of Hawaii* v. *Gibson*, 15 Cal. App. (2d) 407 [59 Pac. (2d) 559], the funds of the district were insufficient to pay all matured interest coupons of the district, and the question was whether the matured interest coupons be paid *pro rata* until the available funds were exhausted, or in the order of presentation, and it was ordered, upon the authority of *Rohwer* v. *Gibson*, 126 Cal. App. 707 [14 Pac. (2d) 1051], *Kimball* v. *Hastings etc. District*, 137 Cal. App. 687 [31 Pac. (2d) 417], and *Cooper* v. *Gibson*, 133 Cal. App. 532 [24 Pac. (2d) 952], that such payments were to be paid *pro rata*.

In *Morris* v. *Gibson*, 30 Cal. App. (2d) 684 [87 Pac. (2d) 37], a bondholder asserted the district was insolvent and sought a *pro rata* distribution of certain funds in the possession of the district to bondholders regardless of maturity. The district was found to be solvent, although financially involved. It was there held that a temporary embarrassment did not justify a departure from the ordinary and usual method of retiring obligations, that is, in the order of their maturity, and cited the case of *State* v. *Duncan*, 334 Mo. 733 [68 S. W. (2d) 679], which had previously been cited with approval in *Bank of Hawaii* v. *Gibson*, 15 Cal. App. (2d) 407 [59 Pac. (2d) 559]. What is there held is particularly appropriate to the present situation:

"The rule announced in many cases is that when a trust fund raised by special assessment is insufficient to pay all having equal claims to it, payment should be made ratably. If a drainage district be insolvent as held in Sturdivant Bank Case (*State ex rel. Sturdivant Bank* v. *Little River D. Dist.*, 334 Mo. 753 [68 S. W. (2d) 671]), all outstanding bonds, (those not due, as well as those matured), must be taken into consideration in the apportionment of the fund. If the district is solvent, there still must be an apportionment, but it is limited to matured bonds and coupons, because in that situation the statute pledges the fund on hand from time to time to the payment of matured (and after that next maturing) principal and interest. We understand this view to be in accord with the following decisions which were cited in the Sturdivant Bank Case, *supra*, and here refer to again: *Rothschild* v. *Village of Calumet Park*, 262 Ill. App. 96, 106; *Thomas* v. *Patterson*, 61 Colo. 547, 159 Pac. 34; *Norris* v. *Montezuma Valley Irr. Dist.* (D. C.) 240 F. 825; *Norris* v.

*Montezuma Valley Irr. Dist.* (C. C. A.) 247 F. 369; *Rohwer* v. *Gibson*, 126 Cal. App. 707, 14 Pac. (2d) 1051.''

The latest case applicable here is *Clough* v. *Baber*, 38 Cal. App. (2d) 50 [100 Pac. (2d) 519]. There an irrigation district was involved, and the district was admittedly insolvent. The rule is there laid down supported by a long line of well recognized authorities that when the debtor is insolvent and there are not sufficient funds with which to pay all obligations in full, and the power to raise funds by taxation *or otherwise* has been exhausted, then equity may order the accessible money prorated among the holders of all valid claims. Such a situation, however, does not here exist. We have no showing of insolvency (and such a status cannot be assumed except upon clear proof), and the power to raise funds by taxation or otherwise, has not been exhausted.

Another case helpful to a determination of the question here presented is that of *Kerr Glass Mfg. Corp.* v. *City of San Buenaventura*, 7 Cal. (2d) 701 [62 Pac. (2d) 583]. There, petitioner, in *mandamus,* sought payment in full of $17,000 of overdue bonds from the city, which was the custodian of an improvement district assessment bond fund. The total obligations of that fund were in excess of $132,000. The payment of petitioner's matured obligations was refused ''because there was not sufficient money in the bond redemption fund to pay all of the outstanding and matured bonds . . . , although there was sufficient to pay the petition in full.'' The Supreme Court directed that the fund be distributed *pro rata,* and in doing so pointed out that this fund was limited without possibility of replenishment, and that in the case of general insolvency proration among matured and unmatured obligations was proper.

The declaration of insolvency of the fund by the city was justified, the court said, because of the large percentage of delinquencies, and the inability of the taxing power of the city to build up a surplus in the general fund, from assessments falling due on the property taken over by the city, with which to replenish the bond fund, either immediately or *in the reasonably near future.*

In the instant case we have no finding of insolvency, no large percentage of delinquencies nor is there any showing that in the reasonably near future the bond fund may not be replenished. As pointed out in the Duncan and Sturdivant

cases, in the event of a present inability to pay with a reasonable prospect of ultimate liquidation in full, the fund will be prorated among the matured obligations only.

We are therefore of the opinion the judgment of the trial court should be affirmed, and that a peremptory writ issue as prayed for except as to the allowance of interest upon a matured bond, which issue is still undetermined and pending before the Supreme Court of this state, and as to that issue the same is denied without prejudice. In all other respects the judgment is affirmed. It is so ordered. Petitioners and respondents to recover costs on appeal.

Thompson, J., and Jones (G. L.), J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 6, 1941, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 3, 1941. Carter, J., voted for a hearing.